The following is a copy of the material parts of the case settled on appeal:
The plaintiff sued the defendant for the sum of $273.42 and interest, claimed to be due for money paid out on defendant's written requests, or checks, by the State National Bank — in other words, an overdraft for that amount.
The plaintiff was the receiver of the bank.
The defendant admitted drawing the checks and the payment of the money by the bank to the amount of the draft, but denied any indebtedness to the bank, or to the receiver, upon the ground stated in the answer.
It was in evidence, without contradiction, and admitted by both *Page 372 
parties, that C. E. Cross was president and S.C. White was cashier of the State National Bank in 1887, and up to March 26th, 1888.
The defendant tendered an issue:
 "To whom was credit given by the bank in the payment of the checks for the alleged overdraft?"
(468) His Honor stated that the issue in this form involved an inference of law, and that the Court would decline to submit it. That the issue would be: "Is the defendant indebted to C. Dowd, receiver, and if so, in what amount?" and upon that issue the Court would charge upon the matters involved. Defendant excepted.
The defendant introduced the following testimony:
Charles E. Cross: "In 1887 and 1888, up to March 26, I was president of the State National Bank; S.C. White was cashier. I instructed White, the cashier, to pay the checks of defendant. I was indebted to defendant personally in a considerable amount for `logging,' or supplying logs to my saw-mill. It had been my habit in settling with defendant to tell him to draw checks on the State Bank, and I would have them paid. I did this for my convenience. Defendant did so, and drew the checks constituting the overdraft claimed by plaintiff to be due. The checks were paid. Defendant's account had been overdrawn before, though he did not know it, and I had made it good. I told the cashier to look to me for the payment of these checks, and I also told Stephenson I would pay them. I was indebted at that time to the defendant more than the amount of the overdraft."
Cross-examined. — "My account was largely overdrawn at the time the checks were paid. I expected to receive some money, and to make a deposit to meet these checks. The directors were not consulted about this matter. They were not consulted usually in small loans, nor in ordinary cases about the payment of checks. I did not wish to increase my own overdraft. I did not make a deposit to Stephenson's credit. It was my habit to make the deposits to his credit at the end of each month."
S.C. White, witness for defendant: "I was cashier for years prior to and in 1888. I controlled the cashing of checks. Defendant was in the habit of drawing checks on the bank. Cross, the president, told me to pay all of defendant's checks; that he was responsible for them (469) and would pay them. I honored these checks on Cross' credit, and looked to him to pay them. Cross had paid former drafts. Mr. Womble, the book-keeper, knew of these transactions. No notice was sent to the defendant of his overdrafts. It was usual to send notices. The checks were charged on the books of the bank to the defendant. No deposit was ever actually made by Cross to meet them."
L. D. Stephenson, the defendant: "I received no notice of any overdraft. Mr. Cross employed me to get logs for his mill, and I had *Page 373 
instructed him to place what he owed me to my credit in the bank, and also $700 for land, and $1,000 for another tract of land, and I thought when I drew those drafts that he (Cross) had placed money to my credit. I was never notified of an overdraft. Bank was closed Saturday, March 26, 1888. The book-keeper was instructed to notify all persons who had overdrawn. I had dealt in same way with Mr. Cross to the amount of $50,000. I did not know of the insolvency of the bank, or Cross, or of Cross' indebtedness to the bank."
Upon the evidence of the defendant, his Honor instructed the jury that the plaintiff was entitled to recover. Verdict and judgment as set forth in the record. The defendant excepted to the charge. From the judgment the defendant appealed.
The material part of the defendant's answer is as follows:
Defence set forth in answer —
2. He admits giving checks on said bank for the amounts set out in the complaint, but denies that he owes anything on that account, and avers the facts connected therewith to be as follows: C. E. Cross, president of said bank, being indebted to this defendant, requested him to give checks on said bank to the amount of his claim, and that the bank would pay the same. This defendant had, prior to this, dealt in a similar way with C. E. Cross, president of said bank, to the amount of many hundred dollars, and the bank paid the checks of this defendant (470) without his putting any money to his credit.
3. Not only the president, but the other officers of said bank, knew, when they paid the checks set out in the complaint, that the money was paid on account of the indebtedness of C. E. Cross, president of said bank, to this defendant, and was not intended to be charged to this defendant, the same being paid by said bank on the account of C. E. Cross, president of said bank, and intended to be a charge against him only.
4. The president of said bank was, at the time said checks were drawn and paid, indebted to this defendant to an amount much in excess of the checks drawn as above, which said bank agreed to pay, and is claimed as an offset to plaintiff's demand.
The Court gave judgment as follows:
"Hereupon it is adjudged that the plaintiff recover against the defendant the sum of two hundred and seventy-three dollars and forty-two cents, with interest on $273.42 thereof from the 13th day of March, 1888, until paid, together with costs and disbursements."
The issue tendered by the defendant did not embrace the whole matter of fact at issue — that submitted by the Court did, and was sufficient.
In the absence of special authority for such purpose, neither its president nor its cashier, nor these officers acting conjointly, had authority or right to appropriate and devote any part of the funds of the bank of which the plaintiff is receiver, to the payment of such president's personal debt due to the defendant. Such authority, ordinarily, was (471) beyond the scope of the purpose and duties of such officers. No doubt the directors — the governing authority of the bank — might allow them to exercise such power, or they might ratify such transaction, but it must in some way sufficiently appear that they did. Gt. on Bk., § 143, et seq.; id., § 171, et seq.
The defendant had no deposit in the bank, nor did it owe him anything, nor was it in any way bound to recognize and pay his checks or orders on it for money. It did, however, pay them, to his use and benefit. He thus obtained money from it by the unauthorized and fraudulent acts of its officers. Cross had no right or authority to tell the defendant that the bank would pay his checks. This the defendant ought to have known. It was his duty to himself and to the bank to see that such permission to draw upon it was authorized.
It was his misfortune that he dealt with and confided in its faithless officer, and not with and in it. The mere fact that he had drawn checks that had been paid before, under like circumstances, was no excuse or justification for drawing those in question, certainly in the absence of knowledge of such transactions on the part of the directors of the bank. If the latter connived at, or, by implication, or otherwise, sanctioned such payment of the checks of the defendant, he should have proven the fact.
The checks were not properly "overdrafts" — the defendant did not have any deposit or credit upon which to overdraw. He got and had benefit of the bank's money in a way not authorized or intended by it, and very certainly it can recover that money, by proper action, as the present one is. Morse on Banking, § 360; Bolles on Bk. and Dep., 358; Franklin Bankv. Byram, 39 Me. 489.
Affirmed.
Cited: Bank v. West, 184 N.C. 222; Stansell v. Payne, 189 N.C. 649;Bank v. Clark, 198 N.C. 172. *Page 375 
(472)