BANK OF CANTON AND TRUST COMPANY v. D. H. CLARK, TRADING AS CLARK CONSTRUCTION COMPANY, AND D. H. CLARK, INDIVIDUALLY.

(Filed 8 January, 1930.)

1. **Banks and Banking C b—Bank officer does not have implied authority to use bank funds for personal liability.**

    The cashier of a bank has no implied authority to use the funds of the bank for his personal or private use, and an agreement between him and another that such other should give his note to the bank for an amount due him by the cashier and that the cashier would pay it upon maturity is not binding upon the bank in the absence of authorization by its board of directors. C. S., 221(n).

**2. Same—One dealing with bank officer is put upon inquiry as to his authority to use bank funds for personal liability.**

Where one enters into an agreement with an officer of a bank whereby the officer was to use the bank's funds for the payment of a personal debt, he is put upon inquiry as to the authority of such officer to make the agreement, or whether the governing body of the bank had given its sanction thereto.

**3. Same—Question of whether bank was estopped from denying authority of cashier to use bank funds for personal debt held for the jury.**

Where the contractor for the erection of a residence for the cashier of a bank has given his note to the bank for the amount due him by cashier, with the understanding that the cashier was to pay it upon maturity, and there is evidence that the contractor inquired at the bank several times and was informed that the note had been paid, when in fact it had been kept by the bank and used by it as collateral, the question is for the jury as to whether the bank in its suit on the note is estopped to set up the fact that the note had not been paid, or deny the cashier's authority to enter the agreement, there being further evidence that thus lulled into feeling secure the contractor had lost his right of statutory lien upon the residence erected for the cashier.

**4. Estoppel C a—Application of doctrine of estoppel by misrepresentation.**

Estoppel by misrepresentation differs from estoppel by record, by deed, or by contract, in that it is not mutual, but applies when the representation of a material fact is false and should have been known as such to the party making it, and was calculated to, and did deceive another, causing him to suffer loss.

**5. Principal and Agent A c—Person first reposing confidence in agent must suffer loss by his wrongful acts.**

Where one of two innocent persons must suffer by the fraud or deceit of another, he who first reposes the confidence must bear the loss.

APPEAL by defendant from *Schenck, J.,* at September Term, 1929, of HAYWOOD. New trial.

*S. M. Robinson and T. A. Clark for plaintiff.*
*Morgan, Ward & Stamey for defendant.*

ADAMS, J. The defendant Clark was a contractor doing business under the name of the Clark Construction Company. On 9 June, 1925, he executed for the Clark Construction Company a promissory note under seal in the sum of $1,700, payable on demand to his own order, with interest at the rate of six per cent per annum. Presentment, protest, notice of protest and of nonpayment, and all defenses growing out of an extension of time were waived on behalf of the maker and endorser. After writing his name on the back of it the defendant delivered the instrument to the plaintiff's cashier and was given credit on his

bank account for the face of the note. More than two years afterwards the plaintiff brought suit, and upon the trial the controversy came down to the single issue of the defendant's indebtedness: "What amount, if any, is the plaintiff entitled to recover of the defendant?" In reference to the issue the judge gave the jury this instruction: "If you find the facts to be as shown by all the evidence, your answer will be $1,700, with interest from 9 October, 1927." The jury returned a verdict and the plaintiff recovered a judgment for this amount, and the defendant appealed upon exceptions formally entered of record. The decisive question is whether there was error in the instruction.

When the transactions between the parties took place the plaintiff's cashier was W. R. Palmer. He had been cashier for the three years next preceding; he continued his service in this capacity for two years after the note was executed. During this period Frank Mease was the vice-president and had active charge of the bank; but both Mease and Palmer made loans without consulting any person connected with the institution. Palmer testified that he left the bank in November, 1927, and Mease in the preceding July, and that each of them repeatedly falsified the records intrusted to their keeping.

There is evidence that Palmer and the defendant, some time before the note was made, entered into a contract to this effect: The defendant for $4,100 was to build a house in Canton for Palmer; the defendant was to draw checks on the plaintiff from time to time to pay for building material, labor, and incidental outlays, and Palmer was to deposit in the bank to the credit of the defendant such sums as were necessary to protect these checks. Palmer made two such deposits of $500 each; but after the defendant had drawn his checks on the plaintiff, for the purposes specified, in sums aggregating $1,500 or more, Palmer found it impossible to deposit an amount sufficient to pay them, and requested the defendant to execute the note in suit. The defendant testified that the note was delivered to Palmer under an agreement between Mease, Palmer and himself that Palmer was to take up the checks and pay the note and that the defendant "was not to pay the note to the bank."

There is evidence that some time after this agreement was made the defendant demanded a return of the note; that Palmer told him "it had been taken care of," and Mease, that it had been paid; that Mease made the latter statement more than a half dozen times; and that by reason of these misrepresentations the defendant was lulled into security, led into giving Palmer credit for $1,700, and deprived of his statutory lien on Palmer's house. It was the defendant's contention that the time for filing his lien had not expired when the plaintiff's officers gave him these assurances, and that the lien would have been filed if he had not been misled by their deceit. Palmer admitted that he was due the de-

fendant $1,700, and that he had made payments of interest and had procured renewals of the note. The defendant neither paid interest nor at any time sought a renewal of the paper.

When he delivered the instrument bearing his endorsement to the plaintiff's cashier and was given a credit of $1,700 on his account, the defendant became liable to the bank, nothing else appearing, for the full amount of the obligation; and the alleged agreement between him and the cashier did not alter the situation or affect his liability. There are two phases of the evidence in which this statement may be considered. When the note was executed the defendant had on deposit with the plaintiff a balance of $2.63; he had drawn thirty-eight checks, for the protection of which, upon the cashier's failure to perform his alleged agreement, the note was requested and his credit of $1,700 was extended. These checks were overdrafts for which the defendant was liable, as he did not have the bank's permission to draw them. The bank owed him nothing above his small balance, and was under no obligation to honor his paper in excess of this amount. This is the law as declared upon similar facts in *Dowd v. Stephenson,* 105 N. C., 467. It is there held, in addition, that without the consent of the governing authority of a bank its officers have no right to appropriate any part of its funds to the payment of their personal debts. Palmer was utterly without authority to bind the plaintiff by diverting or appropriating its assets to the satisfaction of his individual wants. His official position clothed him with no implied authority to accomplish such purpose. He had no right to "absorb the funds" of the plaintiff in payment of his private debts. "No person can act as the agent of another in making a contract for himself." *Hier v. Miller,* 63 L. R. A., 952. Nor could the joint action of Mease and Palmer legally affect this result without the consent of the governing body. It was said in *Dowd v. Stephenson, supra,* that "in the absence of special authority for such purpose, neither the bank's president nor its cashier, nor these officers acting jointly, had authority or right to appropriate and devote any part of the funds of the bank to the payment of the president's personal debt due to the defendant. Such authority, ordinarily, was beyond the scope of the purpose and duties of such officers." Tiffany on Banks and Banking, 325; *Stansell v. Payne,* 189 N. C., 647; *Grady v. Bank,* 184 N. C., 158; *Bank v. West, ibid.,* 220; *Bank v. Lennon,* 170 N. C., 10; *Bank v. Wilson,* 124 N. C., 562, 568; C. S., 221(n).

The defendant knew the terms of the contract; he knew the cashier's interest in it was personal; and this knowledge charged him with the duty of inquiring into the actual extent of the cashier's authority. *Hier v. Miller, supra; Bank v. West, supra.* Under these circumstances he

cannot evade liability on his obligation by proof of "an understanding" with Mease and Palmer that he "was not to pay the note."

The trial judge no doubt had these principles in mind when he gave the peremptory instruction to which the appellant excepted. But there was material evidence which the instruction excludes. According to the testimony of the defendant he called for his note within a few days after the bank had received it and was told by the cashier and the vice-president that it had been taken care of or had been paid. The time for filing a lien on Palmer's house had not then expired. On various subsequent occasions the plaintiff's officers gave him similar assurances: the books, they said, showed no entry against the defendant or the note had been lost; at any rate, it had been paid. Paid by whom? Evidently by Palmer, not by the defendant; and if by Palmer the bank was satisfied and the defendant absolved. These assurances continued until it was too late for the defendant's lien. Meanwhile, the note had been in the service of the bank as collateral security and was next seen by the defendant in the year 1927.

These are some of the contentions of the defendant. He says the officers of the bank deceived him for the purpose of protecting the cashier, the consequence being his alleged liability on the note and his inability to file a lien or to collect anything for building the house. He insists that the governing authority of the bank cannot set up the collusion of its officers as an act *ultra vires,* because the bank as a result of the collusion retained the note as an asset and profited by its use.

There are allegations in the answer and evidence in the record upon which to rest the defendant's theory. If he can establish his contentions to the satisfaction of the jury he may thereby bar the plaintiff of a recovery on the note. He would then have a case to which the doctrine of estoppel by misrepresentation would be applicable. Estoppel of this nature differs from estoppel by record, by deed, and by contract. It is not based upon an agreement of the parties or upon a finding of fact which may not be disputed. It is not mutual, but applies to only one party. The fundamental principle is that a party may be estopped by the false representation of a material fact which he knew or should have known was calculated to deceive and which has deceived another and caused him to suffer loss. There are convincing reasons for denying the availability of the plaintiff's contention that the alleged misrepresentation was unauthorized: there is evidence that the bank derived benefit from the asserted deceit; moreover, where one of two persons must suffer by the fraud or deceit of another he who first reposes the confidence must bear the loss. *R. R. v. Kitchin,* 91 N. C., 39; *Bank v. Liles,* 197 N. C., 413. The appellant is entitled to a

New trial.