### L. T. LIGHTNER v. KNIGHTS OF KING SOLOMON AND ROSA ARMWOOD.

(Filed 8 October, 1930.)

**Estoppel C b—Defendant insurer held estopped in this case from setting up defense that insured fraudulently misrepresented her age.**

> Where, upon the death of the insured, a fraternal insurance lodge delivered by its secretary its check in payment of a policy to the beneficiary, and in his presence the beneficiary endorses it over to the undertaker in payment of services rendered by him in burying the deceased insured, and the difference in cash is paid by underetaker, and the insurer stops payment of the check at the bank upon the ground that the insured was over the age allowed by the insurer's constitution: *Held*, the knowledge of the secretary of the insurer of the age of the insured at the time of the transactions will estop the insurer from maintaining as against the undertaker acquiring the check for full value that the policy was void for fraudulent representations as to the age of the insured in her application for the policy, and in an action by the undertaker on the check a directed verdict in his favor is proper, and *held further*, the receipt by the insurer of premiums from the insured for seven years without questioning her age indicated negligence.

APPEAL by defendant, Knights of King Solomon, from *Small, J.,* and a jury, at January Term, 1930, of WAYNE. No error.

The issues submitted to the jury and their answers thereto were as follows:

"1. In what amount is the defendant, Knights of King Solomon, indebted to the plaintiff on account of the check sued on in this cause? Answer: $326.50, with interest at 6 per cent from 16 March, 1928.

2. In what amount is the defendant, Rosa Armwood, indebted to the plaintiff on account of her endorsement of the said check? Answer: $326.50, with interest from 16 March, 1928."

The court below charged the jury as follows: "Gentlemen of the jury, upon the conclusion of all the testimony, and after due consideration by the court, the court has come to the conclusion that the plaintiff is entitled to a preëmptory instruction; therefore, the court instructs you that if you believe all the testimony and find the facts to be as testified to, and so find them to be true by the greater weight of the evidence, it would be your duty to answer the first issue $326.50, with interest from 16 March, 1928. (If you gentlemen can't remember this, you may take it down on a piece of paper, $326.50 with interest from 16 March, 1928, and answer the second issue, $326.50, with interest from 16 March, 1928.)" To the latter part of this charge in brackets the defendant, Knights of King Solomon, excepted and assigned error.

Judgment was rendered on the verdict. Defendant, Knights of King Solomon, made numerous exceptions and assignments of error, and appealed to the Supreme Court. The material assignments of error and necessary facts will be set forth in the opinion.

*Langston, Allen & Taylor for plaintiff.*
*J. Faison Thomson for defendant, Knights of King Solomon.*

CLARKSON, J. The defendant, Knights of King Solomon, issued two policies on the life of Emma Watson, the beneficiary was Rosa Armwood, her daughter. One was for $200, and the other for $125.00—total $325.00. Notice of death to the Grand Lodge, Knights of King Solomon, stated that Emma Watson died on 14 December, 1927, and was initiated in 1919; "this member was paid up at death," and that "the age of the deceased was 56 years." This was signed by L. W. Williams, H. P. (High Priest), and Amos Artis, Secretary. This notice was sworn to and subscribed to by said officials.

C. F. Rich, head of the Endowment Department and secretary, issued a voucher and had a check made payable to Rosa Armwood, the beneficiary, for $325, on 9 March, 1928. On the face of the check was the following: "Death benefits on life of Emma Watson." Plaintiff is a funeral director, and buried Emma Watson. Rosa Armwood, on 24 December, 1927, transferred and assigned her rights in the insurance to the amount of $196.50, due by her for burying her mother, to the plaintiff and authorized the secretary of the Knights of King Solomon Lodge, Amos Artis, to pay over the above-mentioned amount to plaintiff.

The constitution of the Knights of King Solomon contained the following: (a) No person shall be initiated in this Lodge, under 18 years of age or over 55 years of age, who is not of good moral character, sound in mind and body, producing a physician's certificate of that fact, and a believer in the Supreme Being.—(c) Ages must be correctly stated in application, and any false statement of age, either in application or death proof, shall entitle the beneficiary to amount paid in only, plus 6 per cent interest. (d) The full amount of $150 shall be the total insurance due on all members of the order who joined over 50 years of age, and the return of premiums, plus 6 per cent interest on all who joined over 55 years of age."

The Mutual Benefit Certificate on the life of Emma Watson contained the following: "3. If the material representations in application for insurance are false, no benefits will be paid. If the age is incorrectly given, the benefits to be paid will be adjusted to correspond with correct age."

It was contended by defendant, Knights of King Solomon, that Emma Watson was over the age of 55 when the policies were issued. That

plaintiff and the beneficiary, Rosa Armwood, with this knowledge conspired to defraud the defendant, Knights of King Solomon, and obtain $325—more than the policy allowed in such cases. The plaintiff denied this. Rosa Armwood, a witness for defendant, was asked: "Did you tell a story about your mother's age? Answer: No, sir. Q. To get this check from the company? Answer: No, sir, because I don't know mama's age. Q. Did you agree with Lightner—did you and Lightner get together and agree to tell a story about her age? Answer: No, sir, I was not in the room when it was set down."

In the answer of defendant we find the following: "That, not until after the death of Emma Watson, and not until 14 December, 1927, did this defendant discover the fraud that was attempted to be perpetrated on it."

C. F. Rich, endowment secretary, testified for defendant, and on cross-examination by plaintiff, is the following: "Q. You swore at that time that you knew what you did know about it three months before this check was issued, didn't you? Answer: No, sir. Q. Isn't that what it says? Answer: Yes, sir; that is true. Q. That is what you swore to? Answer: Yes, sir."

It was in evidence that after the voucher was issued by C. F. Rich, head of the endowment department and secretary, the check was received by Amos Artis, secretary of the lodge. Artis testified: "Nothing was said about the woman being too old to recover the insurance. Nobody mentioned her age at all. I never heard Lightner say anything about her age. . . . I delivered it to Rosa to be endorsed by her on account of Lightner's assignment. All of that was approved by me."

When the check was turned over to Rosa Armwood, Artis was present. Rosa Armwood endorsed the check to plaintiff. The check was for $325. Plaintiff had theretofore advanced $196. Plaintiff testified: "With the secretary of the local lodge, I went, with the check, to Rosa Armwood's house. She owed me $196, according to the assignment, so we took the check over, and I gave her $128.50 cash money out of my pocket, as the difference between the burial expenses and the check. She endorsed the check, and this is it. I then took the check to the bank and deposited it. After a while the check came back, saying that payment had been stopped on it, including a protest fee of $1.50. I paid $326.50 and took the check up from the bank. I demanded the money of Rosa Armwood, and also wrote the head lodge about it.

Rosa Armwood, a witness for defendant, testified: "When the check came, on 10 March, Amos Artis brought it to my house. He was secretary of the local lodge of the Knights of King Solomon. The check had been sent to him by the insurance department to be delivered to Rosa Armwood, and not to Lightner. I endorsed the check because Lightner

would not let me get my hands on it unless I did endorse it. He gave me $128.50. The check represented insurance on·my mother. I told Lightner that I did not know my mother's age. I.told Lightner that I did not know how old mama was when she went into the lodge."

From the record it appears that Rich, the head of the endowment department and secretary, issued the voucher with knowledge that Emma Watson was over age, and Artis, secretary of the local lodge, received the check and turned it over to Rosa Armwood, who endorsed it to plaintiff in Artis' presence. Plaintiff paid full value for it and deposited it in the bank. After this was done, although Rich in the answer swears that on 14 December, 1927, he knew that Emma Watson was over age, the check was issued by him and after being issued he then claims that he discovered that Emma Watson's age was beyond the policy limit to receive $325, under the constitution of the defendant, the Knights of King Solomon. He then stopped payment of the check after plaintiff had purchased it for full value and without notice. From the record, we see no evidence of fraud on plaintiff's part; he paid full value for the check, without knowledge as to the age of Emma Watson. Then again, defendant, Knights of King Solomon, received premiums for some seven years from Emma Watson, without questioning her age. This indicates negligence.

From the record, we think the charge of the court below correct. The motions made by defendant for judgment as in case of nonsuit (C. S., 567), were properly overruled. The other assignments of error as to exclusion of evidence, and the refusal to tender the issues submitted by defendant, from the view we take of this action, are not material. The exception to the court below instructing the jury, "If you, gentlemen, can't remember this, you may take it down on a piece of paper," etc., is not material or prejudicial.

We think from the record that defendant, Knights of King Solomon, is estopped on all the facts in this action.

The principle is thus stated in *Bank v. Winder,* 198 N. C., at p. 21, citing numerous authorities: "Where the owner of personal property clothes another with the *indicia* of title, or allows him to appear as the owner, or as having the power of disposition, an innocent third party dealing with the apparent owner will be protected." *Bank v. Liles,* 197 N. C., 413; *Bank v. Clark,* 198 N. C., 169.

There are errors as to certain dates in the record, which are not material. In the judgment we find

No error.