This is a civil action, brought by plaintiff Charleston and Western Carolina Railway Company against the defendants Robert G. Lassiter 
Company and London and Lancashire Indemnity Company of America to recover the sum of $4,407.07, together with interest thereon from 20 June, 1933, until paid, alleged to be due on account of tariff charges on and/or in connection with freight shipments delivered by plaintiff to the defendant Robert G. Lassiter Company. The defendant Robert G. Lassiter Company did not answer and on 6 November, 1933, judgment by default final was rendered against it. The defendant London and Lancashire Indemnity Company of America filed answer, and the cause was thereupon transferred to the civil-issue docket for trial of the issues joined. The defendant London and Lancashire Indemnity Company denied liability to plaintiff Charleston and Western Carolina Railway Company under bond executed in its behalf by its agent and attorney in fact, Stacey W. Wade, alleging that the said Stacey W. Wade did not have the power and authority to execute the same. *Page 410 
The action was tried before his Honor, Henry A. Grady, judge presiding, at Second June Term, 1934, of the Superior Court of Wake County, trial by jury having been waived. At the conclusion of all the evidence, the court allowed the motion of defendant London and Lancashire Indemnity Company for judgment of nonsuit, and from judgment upon this ruling the plaintiff excepted, assigned error, and appealed to the Supreme Court. The necessary facts will be set forth in the opinion. In the opinion the London and Lancashire Indemnity Company of America will be called, for short, Indemnity Company.
At the conclusion of all the evidence the defendant Indemnity Company made a motion in the court below for judgment as in case of nonsuit. C. S., 567. The court below sustained this motion, and in this we think there was error.
The part of the bond in question necessary to be set forth in this controversy is as follows: "Know all men by these presents, that we, Robert G. Lassiter Company, of Oxford, North Carolina, as principal, and London and Lancashire Indemnity Company of America, of Hartford, Conn., as surety, are held and firmly bound unto the Charleston and Western Carolina Railway Company, its successors and/or assigns, hereinafter called the obligee, in the sum of five thousand dollars ($5,000.00), lawful money of the United States of America, for the payment of which, without set-off or counterclaim, we bind ourselves, our heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents. Signed, sealed, and dated this 13 October, A.D. 1931.
"Whereas the obligee has consented to extend to the principal credit of not exceeding ninety-six hours for the payment of tariff charges on and/or in connection with freight shipments, the period of ninety-six hours being as hereinafter construed.
"Now, therefore, the condition of this obligation is such that if the principal shall, within such period of ninety-six hours, pay or cause to be paid to the obligee all such charges, then this obligation to be void; otherwise, to remain in full force and effect, subject, however, to the following express conditions," etc.
The express conditions are not material. The bond is signed as follows: "Robert G. Lassiter Co., Principal (Corporate Seal), by Geo. R. Goodwin, Vice-President. Attest: H. Wolff, Asst. Secty. London Lancashire Indemnity Co. of America, Surety. (Corporate seal of said company bearing words `London Lancashire Indemnity Company of *Page 411 
America.') Stacey W. Wade Son (Seal), by Stacey W. Wade, Attorney in Fact."
It is conceded that under the bond Robert G. Lassiter Company owes the plaintiff Charleston and Western Carolina Railway Company $4,407.07, with interest from 20 June, 1933, until paid. The Indemnity Company contends that it nominated, constituted, and appointed "Stacey W. Wade and/or Louis M. Wade, of Raleigh, North Carolina, its true and lawful agent and attorney in fact, to make, execute, seal, and deliver for and on its behalf, as surety, and as its act and deed." That under the attorney in fact, Stacey W. Wade Son were given power and authority to execute certain kinds of bonds therein mentioned, but not the one in controversy. In its answer the Indemnity Company said: "That the said bond is accordingly invalid and void so far as this defendant is concerned, and not in any respect binding on this defendant."
The agency and attorney-in-fact bond to Stacey W. Wade Son is dated 18 March, 1931. On 4 May, 1931, Stacey W. Wade Son received from the Indemnity Company, through its agent at Richmond, Va., a letter, in part as follows: "Re: R. G. Lassiter Company. Please be advised that we are willing to execute contract bonds for this concern up to $100,000.00 without reference to this office. On larger projects we ask that you secure all possible information with reference to the project and phone or write us for authorization.
"$100,000.00 blanket authorization on this concern without reference to the company may seem to be very small to you, but in view of the fact that this concern represents an entirely new outfit so far as we are concerned, we trust that it will be satisfactory.
"With reference to Freight Charge Bonds, we find it is the usual practice for the company which executes the contract bond to execute the freight charge bonds necessary in the performance of the contract bonded by them under their contract bond. We would not care to execute any such bonds in connection with contracts bonded by some other company, though we will take care of the freight charge bonds executed on our own projects, of course."
The bond in controversy was thereafter issued on 13 October, 1931. Stacey W. Wade testified, in part: "I had no authority from the company to execute bonds other than the authority contained in the power of attorney by writing. I was under the impression I had authority to execute the bond. That is why I executed it. I did not at the time of the execution of this bond give any information whatever to the Charleston and Western Carolina Railway Company as to any limitations on my authority which would prevent the execution of that bond by me in behalf of the London and Lancashire Indemnity Company. . . . Q. *Page 412 
Did you hold yourself out, Mr. Wade, as having authority to write bonds generally for the London and Lancashire Indemnity Company? A. Yes, sir."
We have examined the original bond in evidence, in the possession of the plaintiff and the subject of this controversy. (1) It is a printed form with blanks to be filled in, which clearly indicates that it was furnished by defendant Indemnity Company to its agent and attorney in fact, Stacey W. Wade Son. (2) The printed form has on it "A B — 1300 — 4-31 — 1 M." "Form 3351, Revised 10 April, 1931." (3) "Indemnity Bond for Freight Credits." (4) At the bottom of the bond is a note printed, in part as follows: "Bond must be forwarded to the Treasurer of the Railroad Company for file after being executed. Bond must be for the maximum amount of the credit." (5) The company's name indicated it was an "indemnity company." (6) The agent and attorney in fact, Stacey W. Wade Son, had a seal of the company, and the seal impression is on the bond, with this on it: "London Lancashire Indemnity Company of America." The bond was given to plaintiff and it relied on it, and no knowledge of the limited or restricted authority of the agent and attorney in fact of the Indemnity Company was brought to the attention of plaintiff.
In two aspects, we think the judgment of nonsuit in the court below should be overruled. First: The agent and attorney in fact, Stacey W. Wade Son, were acting within the scope of their apparent authority, and had the form from the Indemnity Company, which was filled out, signed, and sealed by Stacey W. Wade Son, and which, according to the printed form, permitted them to do what they did do — execute an "Indemnity Bond for Freight Charges" to plaintiff. The plaintiff had no notice of the lack of authority.
Second: Where one of two persons must suffer loss by the fraud or misconduct of a third person, he who first reposes a confidence or by his negligent conduct made it possible for the loss to occur, must bear the loss.
On the first aspect, the law is as follows, as stated in Bank v. Hay,143 N.C. 326 (330-331): "The principal is held to be liable upon a contract duly made by his agent with a third person: (1) When the agent acts within the scope of his actual authority. (2) When the contract, although unauthorized, has been ratified. (3) When the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his authority, the term `apparent authority' including the power to do whatever is usually done and necessary to be done in order to carry into effect the principal power conferred upon the agent and to transact the business or to execute the commission which has been entrusted to him; and the principal cannot restrict his own liability for acts of his agent which are within the scope *Page 413 
of his apparent authority by limitations thereon, of which the person dealing with his agent has not notice. The principal may also, in certain cases, be estopped to deny that a person is his agent and clothed with competent authority, or that his agent has acted within the scope of his authority which the nature of the particular transaction makes it necessary for him to have. Tiffany on Agency, 180, et seq.; Biggs v. Ins. Co.,88 N.C. 141."
Speaking to the subject in Bowers v. Lumber Co., 152 N.C. 604 (606): "The Guaranty and Surety Company entrusted Willard and Vines with a bond, to which its corporate seal had been affixed, and it was licensed to do business, that is, to execute an indemnity bond, in this State. When this was done, the Guaranty and Surety Company put it in the power of Willard and Vines to induce others to believe that they had the power and authority to execute a bond in its behalf as surety, even if the signatures of the said agents were necessary to make it a valid bond as against the company after it had thus affixed its corporate seal and its corporate name had been signed to the bond."
The Indemnity Company had license signed by the Insurance Commissioner, as follows: "Date: 20 April, 1931. . . . The London Lancashire Ind. Insurance Company of New York City has been licensed for the year ending 1 April, 1932, and Stacey W. Wade of Raleigh, North Carolina, is the duly authorized and licensed agent for said company." A similar license was issued to Louis M. Wade, as agent. See North Carolina Code of 1931 (Michie), secs. 6262, 6288, 6298, and 6302.
This is not an action between a principal and agent where the scope of the agent's authority is the authority actually conferred upon him by the principal, but this is an action by a third party and a different principle is applicable. Confusion has arisen in the decisions on the subject when the distinction is not kept in mind.
The principle applicable to the facts in this action is also set forth in R. R. v. Smitherman, 178 N.C. 595 (598-9), as follows: "While as between the principal and agent the scope of the latter's authority is thatauthority which is actually conferred upon him by his principal, which may be limited by secret instructions and restrictions, such instructions and restrictions do not affect third persons ignorant thereof, and as betweenthe principal and third persons, the mutual rights and liabilities aregoverned by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, and which the principal is estopped to deny. The apparent authority, so far as thirdpersons are concerned, is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation *Page 414 
to inquire into the agent's actual authority. The authority must, however, have been actually apparent to the third person, who, in order to avail himself of rights thereunder, must have dealt with the agent in reliancethereon, in good faith and in the exercise of reasonable prudence, in which case the principal will be bound by the acts of the agent performed in the usual and customary mode of doing such business, although he may have actedin violation of private instruction, for such acts are within the apparentscope of his authority." (Italics ours.) Trollinger v. Fleer, 157 N.C. 81;Powell v. Lumber Co., 168 N.C. 632; Furniture Co. v. Bussell, 171 N.C. 474;Cardwell v. Garrison, 179 N.C. 476; Bobbitt Co. v. Land Co.,191 N.C. 323; Sears, Roebuck Co. v. Banking Co., 191 N.C. 500; Bank v.Sklut, 198 N.C. 589.
Page, in his valuable work on Contracts, Vol. 3, 2d Edition, part sec. 1760, at p. 3018, states the matter thus: "Outside of the class of public agents, the actual authority conferred by a principal upon his agent ispractically inaccessible to the public at large. Accordingly, persons who do not know what the agent's authority really is are justified in dealingwith him upon the assumption that he has the authority which the principalindicates by his conduct that the agent possesses. Thus dealing with the agent, such persons may hold the principal on contracts outside the realauthority of the agent, but inside his apparent authority." (Italics ours.)
In Couch Cyc. of Ins. Law, Vol. 2 (1929), pp. 1479-80, and part of sec. 517, is in full accord with the decisions of this and other courts on the subject. We find: "It is within the power of an insurance company, as between itself and its agent, to define and limit the powers of the latter, but it is equally well settled that the rights of innocent third parties dealing with an agent, within the apparent scope of his authority, cannot be affected by private instructions to such agent, of which they have no notice or knowledge, or by secret limitations upon his authority. In fact, it is clear that insurance companies are responsible for the acts of their agents within the general scope of their business entrusted to their care, and that no limitations of their authority will be binding on parties with whom they deal, which are not brought to the knowledge of those parties, especially where such persons rely in good faith upon his apparent authority. Undoubtedly, if an officer of an insurance company assumes to possess certain powers, and the nature of his employment justifies the assumption of authority, and the party dealing with him has no notice of want of the claimed authority, and there is nothing to warrant an inference to the contrary, the company is bound, even though he had no such power as claimed. And it would seem to be especially true, as it has been held, that limitations upon the powers of, or secret instructions to, a general agent do not bind third *Page 415 
persons dealing with him without notice thereof; also, that it is no defense that the general agent departed from private instructions when acting within the general scope of his authority, unless such instructions be made public, or the insured has notice, or unless the party dealing with the agent is, by reason of the attendant circumstances, or something in the nature of the business, or by custom, or by a course of dealing, or otherwise, put upon inquiry as to the exact limits of the agent's authority." Bank v. Winder, 198 N.C. 18; 7 R.C.L., "Corporations," secs. 621-622, pp. 625-626; 2 C. J., pp. 566-567-568, secs. 208-209.
On the second aspect the law is as follows, as stated in Railroad v.Kitchin, 91 N.C. 39 (44): "Where one of two persons must suffer loss by the fraud or misconduct of a third person, he who first reposes the confidence, or by his negligent conduct made it possible for the loss to occur, must bear the loss." Barnes v. Lewis, 73 N.C. 138; Vass v.Riddick, 89 N.C. 6; Bank v. Liles, 197 N.C. 413 (418); Bank v. Clark,198 N.C. 169 (173); Lightner v. Knights of King Solomon, 199 N.C. 525
(528).
The defendant Indemnity Company contends, "The plaintiff was clearly charged with making an inquiry upon the presentation of a bond by an attorney in fact, which would have disclosed beyond any question that the agent had no authority whatever to execute the bond involved in this suit." We cannot so hold. The authorities above cited are to the contrary. The Indemnity Company made Stacey W. Wade Son "its true and lawful agent and attorney in fact" broader than the Indemnity Company now contends. In this kind of insurance agency, we do not think the contention of the Indemnity Company well taken. Bowers v. Lumber Co., supra.
There are other matters discussed by the litigants, but we do not think them material to this controversy. For the reasons given, the judgment of the court below is
Reversed.