EDGECOMBE BONDED WAREHOUSE COMPANY v. SECURITY NATIONAL BANK.

(Filed 11 October, 1939.)

**1. Appeal and Error § 40e—**

Upon defendant's exception to a peremptory instruction for plaintiff, the Supreme Court will consider the evidence in the light most favorable to defendant, giving him the benefit of every reasonable intendment thereon and every reasonable inference therefrom, in determining the sufficiency of defendant's evidence to put at issue plaintiff's right of recovery.

**2. Bills and Notes § 7a—**

A note payable to bearer is negotiated by delivery, a note payable to order is negotiated by endorsement of the holder and completed by delivery, C. S., 3010, and a note with special endorsement requires the endorsement of the person specified therein to further negotiation of the instrument, C. S., 3015, and endorsements may be either in blank or special, which may also be either restricted or qualified or conditional, C. S., 3014, and for convenience endorsements may be divided into endorsements in blank, which are unqualified, and endorsements not in blank, which are qualified.

**3. Bills and Notes § 7b—**

The designation of a particular class is sufficient to render an endorsement special, and therefore an endorsement to "any bank, banker or trust company" is a special endorsement precluding the further negotiation of the instrument without the endorsement of one of the class specified.

**4. Same—**

Where the original endorsement is authorized, subsequent diversion of the funds will not make it a forgery.

**5. Corporations § 20—**

The secretary-treasurer of a corporation has the authority to present to the corporation's local depository, either for deposit or for payment in cash, checks received by the corporation and drawn on out-of-town banks.

**6. Principal and Agent § 8a—**

A principal is bound by the acts of his agent which are within the agent's express or implied authority, and a person who, in the exercise of reasonable prudence and good faith, relies upon the agent's apparent authority is not chargeable with secret limitations upon that authority.

**7. Banks and Banking § 8a: Bills and Notes § 7b—**

Where a check payable to a corporation is endorsed by its duly authorized agent "pay to any bank, banker or trust company," the corporation's local bank may accept the check and pay the amount thereof to the corporate officer or employee who has the authority, either express or implied, to present it.

WAREHOUSE CO. *v.* BANK.

**8. Principal and Agent § 10a—**

Where one of two innocent parties must suffer by the wrongful act of an agent, he who selects the agent and places it in the agent's power to do the wrong must suffer the loss.

**9. Banks and Banking § 8a: Bills and Notes § 7b—Evidence held to raise issue as to whether agent had implied authority to cash check having special endorsement.**

The checks in question had been endorsed by the corporate payee "pay to any bank, banker or trust company," and had been accepted by the corporation's local bank and the amount thereof paid in cash to agents and employees of the corporation. The bank of deposit introduced evidence of a course of dealing between the bank and the corporation over a period of time, to the knowledge of the corporation's secretary-treasurer, under which the corporation's checks so endorsed had been paid to the same agents and employees of the corporation, and that checks so endorsed had been left where they were accessible to such agents and employees. *Held:* A peremptory instruction that the corporation was entitled to recover of the bank funds diverted by its agents and employees out of funds received by them from the bank upon checks having such special endorsement is error, since the evidence of implied authority of the agents and employees to present the checks, and evidence that the corporation placed it in their power to commit the wrong, requires the submission of appropriate issues to the jury.

**10. Banks and Banking § 8a—**

Notice to a bank by its corporate depositor to honor all checks, drafts, etc., for the withdrawal of the funds of the corporation only when made, drawn, accepted or endorsed by at least two of its officers, by its terms embraces only the withdrawal of funds deposited in the bank and does not apply to the advancement of money by the bank on checks payable to the corporation and drawn on another bank, pending presentment to and payment by the payee bank.

APPEAL by defendant from *Thompson, J.,* at June Term, 1939, of EDGECOMBE. New trial.

Civil action to recover $4,862.77 and interest, representing the total of forty-nine checks, payable to the order of plaintiff, which were received by the defendant and collected from the payee banks, the plaintiff alleging that it has never received the money or credit therefor.

The plaintiff is a corporation engaged in the business of operating a bonded storage warehouse in Tarboro, where it accepts for storage commodities of all kinds, particularly cotton and other farm products and whiskey on account of distillery companies. In the case of whiskey, the distillery companies would pay, at the first of each month, storage charges for all whiskey withdrawn during the preceding month. In the case of cotton and other commodities, the storage was ordinarily paid upon bill rendered, after the commodity was withdrawn from storage.

During the period from November, 1936, to May, 1938, the plaintiff received, among others, the particular forty-nine checks which are the subject matter of this action. The first of the forty-nine checks was dated 14 November, 1936, and the last one was dated 12 May, 1938. These checks were drawn by customers of the plaintiff on numerous banks located in points other than Tarboro, with the exception of five which were drawn on the defendant's branch bank in Tarboro. All of these checks were endorsed by plaintiff with the following endorsement: "Pay to the order of any bank, banker or trust company. All prior endorsements guaranteed. Edgecombe Bonded Warehouse Company, by A. B. Bass, Sec-Treas." The endorsement was made by A. B. Bass, secretary-treasurer, by the use of a rubber stamp, except the signature "A. B. Bass," which was inserted in Bass' handwriting. This endorsement was the one used by the plaintiff throughout the course of its dealings with the defendant. Some of the checks received by the plaintiff represented funds which belonged in part to the plaintiff and in part to Bass Bonded Trucks, Inc., of which Bass was likewise an officer.

The forty-nine checks were, from time to time, presented to the defendant's bank at Tarboro, N. C., and it advanced the money thereon and placed the same in the course of collection. Thereafter, in due course, the defendant collected the checks from the drawee bank. The plaintiff alleged and offered evidence tending to prove that these checks were cashed by parties to the plaintiff unknown and who were unauthorized to receive the cash thereon. The defendant alleged and offered evidence tending to prove that all of these checks were cashed by and the money paid to the officers or employees of the plaintiff company, pursuant to one of the customary methods adopted by the plaintiff in handling checks received by it. It further offered evidence tending to show that employees of the plaintiff who presented such checks to the defendant were vested with express or implied authority so to do. It likewise offered evidence tending to show the negligent manner in which the plaintiff handled checks in its possession after the same had been endorsed, and the manner in which checks were handled when deposited to the credit of the plaintiff.

The court submitted the following issue:

"Is the defendant indebted to the plaintiff and, if so, in what amount?"

It charged the jury in respect thereto: "Gentlemen of the jury, as I view this matter, it resolves itself into a question of law largely. I am submitting one issue to you with the peremptory instruction as to how to answer that issue. I instruct you, gentlemen, if you believe the evidence and find the facts to be as it tends to show, you will answer that issue $4,862.77, with interest thereon from the date of payment of each check involved in the lawsuit."

The jury answered the issue as instructed. Judgment was rendered thereon and the defendant excepted and appealed.

*Battle & Winslow and H. H. Philips for plaintiff, appellee.*
*Gilliam & Bond for defendant, appellant.*

BARNHILL, J. The court below, as evidenced by its charge, held, as a matter of law, that the defendant had offered no evidence of any probative force which challenged or put at issue plaintiff's right of recovery. In ascertaining the correctness of this conclusion the evidence must be considered in the light most favorable to defendant and it is entitled to every reasonable intendment thereon and every reasonable inference therefrom, for it is the province of the jury to determine the weight and credibility of the testimony.

On this question the plaintiff contends that the form of the endorsement on the checks was of such nature as to prevent the further negotiation of the checks by anyone other than a bank, banker or trust company, and that the payment by the defendant to a third party not coming within that class renders the bank liable to the plaintiff. On the other hand, the defendant contends that it has offered evidence sufficient to be submitted to the jury tending to show that those who presented the checks were employees of the plaintiff, impliedly authorized to present them to and obtain cash therefor from the defendant bank; and that the negligent conduct of the plaintiff in the manner in which it handled the checks after the endorsement was such as to place any resulting loss upon it and not upon the defendant.

If there were but one check involved, or if the uncontradicted evidence tended to show that all of the checks were paid to third parties not connected with the plaintiff, nothing else appearing, we would readily concur in the view of the plaintiff.

Our statute provides that an endorsement may be either in blank or special, and it may also be either restricted, or qualified or conditional. C. S., 3014. A special endorsement specifies the person to whom, or to whose order, the instrument is to be payable; and the endorsement of such endorsee is necessary to the further negotiation of the instrument. C. S., 3015. If payable to the bearer, it is negotiated by delivery; if payable to order, it is negotiated by the endorsement of the holder and completed by delivery. C. S., 3010. For convenience, endorsements might well be put into two general classes: unqualified—in blank; and qualified—all endorsements not in blank.

The requirement that an endorsement shall specify the person to whom, or to whose order, the instrument is payable is necessary to make it a special endorsement is fully met when a particular class is desig-

nated.   Thus, an endorsement to "any bank, banker or trust company"
is a sufficient designation of a person to make the endorsement special
and to require the endorsement of one within that class as a prerequisite
to the further negotiation of the instrument.   *State Planters & Trust
Co. v. Fifth Third Union Trust Co.,* 56 Ohio App., 309, 10 N. E. (2nd
Ed.), 935; *First Nat'l Bank v. Brunke,* 289 S. W., 372; *Cario Nat'l
Bank v. Blanton,* 287 S. W., 839; *Sands v. Clark,* 284 S. W., 902;
*Behringer v. City Nat'l Bank,* 296 S. W., 674.   Nothing else appearing,
a check endorsed in the manner adopted by the plaintiff in the hands of
someone who had found it upon the street or by a person other than the
plaintiff or its agent would not be negotiable in the hands of such person
and he could not pass title thereto.   Anyone accepting the same would
do so at his own risk unprotected by the Negotiable Instrument Law.
Under these circumstances, by reason of the limitations of the endorse-
ment, neither the person cashing the check nor the bank receiving it
could have or acquire any title to the same.

The case here presented is not so simple.   The transactions involved
extended over a period of eighteen months.   That the original endorse-
ment was authorized is admitted.   There is evidence that checks so
endorsed were presented, to the knowledge of the plaintiff, by employees
of the plaintiff to the defendant for discount or payment over the coun-
ter.   The chief clerk, who acted as assistant to the secretary-treasurer,
during the time these checks were received by the plaintiff and long
prior thereto, testified that she took checks endorsed as here to the de-
fendant bank and procured the cash therefor to the end that she might
divide the proceeds thereof between the plaintiff and the Bass Bonded
Trucks, Inc., which had a part interest therein, and there is evidence
that she presented and obtained cash for many of the checks in contro-
versy.   She testified: "I did not cash any of the checks and put the
money in my pocket.   When I cashed these checks at the bank I would
see Mr. Martin, Mr. Carstarphen or Mr. Haven (tellers of the defendant
bank) and I would tell them why I was cashing the checks.   To the best
of my recollection we have also sent the colored man (plaintiff's janitor)
there to cash checks.   I think Mr. Bass went down and cashed them;
I couldn't say positively.   I don't recall seeing Mr. Bass use but one
endorsement stamp when the check was owned by both corporations."
J. M. Carstarphen testified: "The reason I did not require the endorse-
ment of the person who got the money was that it had been the custom
of the warehouse company to bring pay roll checks to the bank and they
have also brought these checks along about the same time, these checks
that were cashed."   He identified three of the checks in controversy as
having been cashed over the counter by him.   R. B. Havens, Jr., testi-
fied that he had cashed thirty-two of the checks in controversy.   He

further stated : "I can't recall each individual check but I do recall on several occasions waiting on Mrs. Fullwood (chief clerk and assistant to Bass) and one check I remember the amount because it was rather odd. One check for $50.00 I cashed for Jaf Gray (the janitor). This was the same colored man spoken of by other witnesses. On several occasions I waited on Miss Whitley (Mrs. Fullwood) and as well as I can remember these checks were drawn on Peoria. I divided these checks so a division could be made between the truck and warehouse, gave her the cash in a form so the division could be made. Miss Whitley asked for it in that manner. She put it up there and asked me to cash it so as to make a division between the two. I can't recall each item but I recall handling it several times in that way. I can pick out the $50.00 check. I can also pick out, when I waited on Miss Whitley, a check some over $300. After this matter arose I had several conversations with Mr. Bass and he said that he knew that some of the checks had been cashed for a division and that cashiers' checks had been issued prior to this in payment of the two accounts for a split check. I have never seen any checks payable to the warehouse company endorsed in any other way than with the endorsement which appears on these checks. The funds of the bank were paid out for each of the thirty-two checks bearing my teller's number. I remember issuing a cashier's check to Mr. Walston (secretary of the plaintiff who usually made the deposit) on one occasion in order to divide up a check payable to the plaintiff." Randolph Martin testified : "I cashed eight of the checks in this action. I remember the circumstances under which one of these checks was cashed, the $268.55 check of Old Mr. Boston drawn on Boston, by Ben Burk, it is a liquor check, it is payable to the warehouse company. I cashed this check for Miss Whitley and remember very distinctly counting out fifties and giving it to her and she put it back and asked for twenties, said so she could divide it between the two firms, the warehouse company and the truck company. I cashed the majority of the eight checks for Miss Whitley. I remember cashing one for Mr. Bass. On one or two occasions they would send the old darkey, and part of the money would be sent back in a book and he would take it back, part of the cash was deposited. I paid the money on all eight of these checks to these three people. I had several conversations with Mr. Bass after this matter came up and he said he hoped Mr. Bridgers had had them cashed in order to teach him a lesson, said he had been cashing these and Mr. Bridgers wanted him to stop, that it was a bad practice, and he said he hoped Mr. Bridgers had the money put away to teach him a lesson. He said Mr. Bridgers had warned him a year before the controversy, but he had continued to do it." In addition, Mr. Bass testified that checks were sent to the bank through Mr. Walston, Miss Whitley

and the janitor. Likewise, there is testimony that when checks were received by the plaintiff they were endorsed by Bass in the authorized manner and then were left in the cash journal, in the drawer to his desk, or in an unlocked safe, from one or two days to several weeks. There is also testimony that these checks were, some time after endorsement, sent to Mr. Walston who made out the deposit slip listing the checks received by him. He made entries of the checks deposited, but made no effort to check his records with those kept by Bass or to determine whether he had received all of the checks. Nor was there an audit of the unpaid bills to ascertain which had been paid, and the plaintiff did not discover the alleged misuse of its checks until more than eighteen months after the first check was cashed.

There is no definite statement in the record as to whether the checks in which the plaintiff and the Bass Bonded Trucks, Inc., had a joint interest, were payable to the plaintiff or to the plaintiff and the Bass Bonded Trucks, Inc., other than the statement of Miss Whitley, that some of the checks were payable jointly to the two corporations. However, the clear implication to be drawn from the statement of witnesses is that many of these checks were payable to the plaintiff and that the plaintiff accounted to the Bass Bonded Trucks, Inc., for so much thereof as belonged to it.

There is no controversy about the original endorsements. They were made by Bass, who was secretary-treasurer. His official position gave him implied authority to endorse and the evidence discloses that he had actual authority as well. The original endorsement being authorized, the diversion of the funds after endorsement will not make it a forgery. *Standard Steamship Specialty Co. v. Bank,* 220 N. Y., 478, 116 N. E., 386, L. R. A., 1919 B, 575; *Rivers v. Bank,* 133 S. E. (S. C.), 210. The secretary-treasurer is the officer of a corporation expressly charged with the duty to handle its funds. His authority, as such, includes the power to present checks received from customers and drawn on out-of-town banks to the local depository of the corporation either for deposit or for payment in cash. There is nothing in this record which limits this implied authority—certainly none of which the defendant had notice. The resolution adopted by the plaintiff, as we hereafter point out, does not have this effect.

Does this testimony constitute more than a scintilla of evidence tending to show that Miss Whitley and the janitor had implied authority to present checks to the defendant for payment over the counter?

"While as between the principal and the agent the scope of the latter's authority is that authority which is actually conferred upon him by the principal, which may be limited by secret instructions and restrictions, such instructions and restrictions do not affect third persons ignorant

thereof, and as between the principal and third persons the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, and which the principal is estopped to deny. The apparent authority, so far as third persons are concerned, is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation to inquire into the agent's actual authority. The authority must, however, have been actually apparent to the third person, who, in order to avail himself of the rights thereunder, must have dealt with the agent in reliance thereon, in good faith, and in the exercise of reasonable prudence, in which case the principal will be bound by the acts of the agent performed in the usual and customary mode of doing such business, although he may have acted in violation of private instructions, for such acts are within the apparent scope of his authority." *R. R. v. Smitherman,* 178 N. C., 595; *Trollinger v. Fleer,* 157 N. C., 81; *Powell v. Lumber Co.,* 168 N. C., 632; *Furniture Co. v. Bussell,* 171 N. C., 474; *Cardwell v. Garrison,* 179 N. C., 476; *Bobbitt Co. v. Land Co.,* 191 N. C., 323; *Sears Roebuck & Co. v. Banking Co.,* 191 N. C., 500; *Bank v. Sklut,* 198 N. C., 589; *R. R. v. Lassiter & Co.,* 207 N. C., 408. "Accordingly, persons who do not know what the agent's authority really is are justified in dealing with him upon the assumption that he has the authority which the principal indicates by his conduct that the agent possesses." *R. R. v. Lassiter & Co., supra.*

If a third party—not a bank, banker or trust company—presented a check to the defendant, endorsed as here agreed, the endorsement was ample notice to the bank that such check was not negotiable in the hands of the individual presenting it; if the check, so endorsed was presented by the plaintiff through one of its officers or employees who had authority, either express or implied, so to do, the bank, being within the class designated in the endorsement, incurred no liability by the acceptance of the same. The payment of the face amount of the check to such agent was payment to the plaintiff. When the checks were endorsed in the authorized manner by an authorized officer in the manner agreed, the effect was the same as if they had been endorsed "pay to the order of Security National Bank." If an employee, as an authorized conduit through which the check passed from the plaintiff to the defendant, presented a check so endorsed, it was presentment by the plaintiff to one who came within the class designated in the endorsement.

There is evidence that over a considerable period of time, employees of the plaintiff, from time to time, presented checks payable to the plaintiff and drawn on banks in various sections of the country, to the defend-

ant for payment over the counter. The acceptance of such checks and the payment of the amount thereof is a service customarily rendered by banks to their customers. It is immaterial whether any of the checks in controversy were among those so presented. If the jury finds these to be the facts then the conduct on the part of the plaintiff was such as to vest such employees with the implied authority to act as a conduit through which the checks passed from the plaintiff to the defendant for payment in cash. If the plaintiff, in fact, so handled the checks and the jury finds that its conduct in so doing was such as to reasonably lead the defendant to believe that the employees acted under the direction of the plaintiff, the implied authority thereby vested in the officers and employees who so presented the checks will protect the defendant. Any loss resulting from the misuse of funds thus obtained by any agent or employee of the plaintiff must be sustained by the plaintiff rather than by the defendant.

"Where the transactions of an agent or employee of a corporation, acting within the scope of his duty, causes a loss which must fall either on the corporation or a third party, both being innocent, the corporation who selected its own agent must suffer the loss." *Shuford v. Brown,* 201 N. C., 17. The loss must be borne by those who put it in the power of the agent to do the wrong rather than by a stranger. *County of Macon v. Shores,* 97 U. S., 272; *Bank v. Liles,* 197 N. C., 413; *O'Connor v. Clark,* 170 Pa., 318, 29 A. L. R., 607. He who first made it possible for the loss to occur must bear the loss. *Lightner v. Knights of King Solomon,* 199 N. C., 525; *R. R. v. Kitchin,* 91 N. C., 44; *Bank v. Liles, supra; White v. Johnson & Sons,* 205 N. C., 773; *R. R. v. Lassiter, supra; Bank v. Clark,* 198 N. C., 169.

Is there evidence that the plaintiff, by its negligent conduct, put it in the power of its employees to commit the wrong complained of so as to permit the defendant to invoke the principal laid down in the foregoing cases?

There is not only some evidence that certain employees of the plaintiff were used as messengers to carry checks to and obtain cash from the defendant bank, but there is likewise evidence that the checks in controversy and others were endorsed when received and were left lying around in the cash journal, in a desk drawer and in an unlocked safe, easily accessible to such employees so that they could, at will, abstract a check, already endorsed, and present it to the bank. The bookkeeping methods adopted by the plaintiff were such as to make this possible with a minimum degree of risk of discovery. In fact, the plaintiff did not discover the misuse of checks until after the last one had been presented to and paid by the bank, more than eighteen months after the first one was cashed.

We are of the opinion, therefore, that this evidence coupled with the testimony tending to show an implied agency, is such as to require the submission of appropriate issues to the jury.

The plaintiff calls our attention to and relies on the case of *Rivers v. Liberty Bank,* 135 S. C., 107, 133 S. E., 210. The facts in that case make it distinguishable. It is not controlling on the facts here presented.

The plaintiff insists that a resolution adopted by it, copy of which was furnished to the defendant, put the defendant on notice that no one of its officers or employees was authorized to withdraw funds upon any check payable to the plaintiff unless signed or endorsed by at least two of its officers, and that its loss is directly attributable to the total disregard by the defendant of the limited nature of the endorsement and the express terms of the resolution. We do not so interpret the resolution. It appointed the defendant a depository of the plaintiff and authorized it "to honor and pay all checks, drafts, acceptances, promissory notes, bills of exchange, orders for the payment of money or other instruments for the withdrawal of funds (including instruments payable to the order of the officer or officers signing the same) only when made, drawn, accepted or endorsed by at least two of its officers" designated in the resolution. The specified particular instruments followed by the general term *orders for the payment of money or other instruments for the withdrawal of funds* make it clearly appear that the resolution refers to the withdrawal from the bank of funds belonging to the plaintiff. A check drawn on another bank payable to the plaintiff, upon which the defendant advanced money, pending presentment to and payment by the payee bank, is not an order or instrument for the withdrawal of plaintiff's funds from defendant bank. The resolution and the letters relating thereto, addressed to the defendant, give notice that no funds deposited in the defendant bank, a designated depository of plaintiff, can be withdrawn except upon the signature of at least two officers. It is not sufficiently broad to embrace the transactions which are the subject matter of this suit. There is evidence tending to show that the plaintiff did not so regard it.

Defendant's exception to the charge of the court below must be sustained.

New trial.