HOWARD-BOBBITT CO. v. NEVER FAIL LAND CO.

(Filed 3 March, 1926.)

**1. Principal and Agent—Implied Authority—Scope of Agency—Secret Limitation of Authority.**

An agent may not only bind his principal by acts for which specific authority as such agent is given, but also for all acts necessary to the performance thereof, and generally within the powers conferred on like agents and within the apparent scope of their authority; and to escape liability the principal may not set up secret limitations unknown to one advancing the agent money on the strength of the relationship, when such is ordinarily implied by agencies of like character.

**2. Same—Farming Supplies—Evidence—Questions for Jury.**

Evidence that the principal sought to be bound received bills for farming supplies furnished the supposed agent, and remitted for same, is sufficient to sustain a verdict binding the principal for the payment of a balance of the running account, notwithstanding conflicting evidence in behalf of the principal that the agent purchased the goods on his own account under an arrangement unknown to the plaintiff, by which the principal had agreed only to advance a limited amount of money for the farming purposes, under a rental contract with the alleged agent.

Appeal by defendant from *Devin, J.,* and a jury, September Term, 1925, of Lee. No error.

Plaintiff alleges:

"1st. That it is a corporation, organized and doing business under the laws of the State of North Carolina, with its principal office and place of business in the city of Sanford, county of Lee, said State, and,

among other things, is and was at the time hereinafter set out, engaged
in the wholesale grocery business; and that the defendant is a corpora-
tion, and as plaintiff is informed and believes, organized and doing
business under the laws of the State of North Carolina, with its princi-
pal office in the city of Oxford, county of Granville, and State afore-
said, and, among other things, is engaged in farming on a large scale
in the county of Harnett in said State.

2d. That during the year 1923 the plaintiff sold and delivered to the
defendant, at its farm at Pineview, Harnett County, North Carolina,
large quantities of merchandise, amounting to the sum of $476.14, and
charged the same against the defendant."

Plaintiff alleges the amount is due and owing, and demands judg-
ment for the $476.14, interest and cost.

Defendant answers and says:

"1st. That the defendant admits that it is a corporation organized and
doing business under the laws of the State of North Carolina with its
principal place of business at Oxford, North Carolina, and that it is
engaged in farming in Harnett County; as to the other allegations of
paragraph 1 of the complaint the defendant has no sufficient informa-
tion upon which to form a belief, and therefore denies the same, and
demands strict proof thereof.

"2d. The allegations of paragraph 2 of the complaint are untrue and
are denied."

Defendant denies that it owes any sum to plaintiff, and asks that it
go without day, etc.

The issue submitted to the jury and their answer thereto was as
follows: "Is the defendant indebted to the plaintiff, and, if so, in what
amount? Answer: $476.14."

A judgment was rendered on the verdict. Defendant assigned error.
Numerous other assignments of error were made by defendant and
appeal taken to the Supreme Court. The material ones will be con-
sidered in the opinion.

*Gavin & Jackson for plaintiff.*
*Marshall T. Spears and Williams & Williams for defendant.*

CLARKSON, J. The material facts are: Howard-Bobbitt Co., the plain-
tiff, is a corporation doing a wholesale grocery business in Sanford,
N. C. The Never Fail Land Co., the defendant, is a corporation en-
gaged in farming in the county of Harnett, at Pineview, N. C., with
its principal office in Oxford, N. C. S. S. Puckett rented, the year
1923, from the Never Fail Land Co., certain of its land in Harnett
County and cultivated 341 acres in tobacco. Puckett's contract was to
pay for the land one-fourth of the crop raised as rent. Puckett had

eighteen or twenty tenants, and had to furnish supplies to the tenants, but did not have money to run the farm. The Never Fail Land Company agreed to make advances in money and help to run the farm. It was agreed that $6,800 should be borrowed from the bank in Oxford; the discount, etc., reduced the fund to $6,600. This amount was placed to the credit of Puckett, and the Never Fail Land Company to be used in buying supplies for Puckett and his tenants. The $6,600 was gotten for a period of six months. It was exhausted in August. Plaintiff shipped the supplies by trucks sent from the farm or by freight to the farm at Pineview. The bill of lading and itemized statements were sent with the shipments and the bills of lading were made out "From Howard-Bobbitt Company to Never Fail Land Farm, Pineview, N. C." All the statements for supplies plaintiff made out to Never Fail Land Company. They were given Puckett and he OK'd them and sent them to Never Fail Land Company at Oxford.

R. E. Bobbitt, secretary and treasurer of plaintiff, testified: "They would send the check in settlement of the statement. We sold defendant Never Fail Farm goods amounting to something over $2,000 during the year 1923, and they paid the bills and statements as rendered at different intervals during the summer of 1923: on 30 May they paid us with check for $269.03; 2 July, $367.99; 6 August, check for $477.79; 3 September, $487.75; 3 September, $335.85, all of which checks were credited on the account of the defendant." The amount now sued for is for supplies furnished from 30 August to 30 October, 1923. In payment Puckett brought the checks to plaintiff from defendant, which were signed by the Never Fail Land Company. "The Never Fail Land Company" was printed on the checks. The credit was extended to Never Fail Land Company. None of the items of supplies were charged to Puckett, but were charged to Never Fail Land Company. The supplies were delivered to Puckett, who stated he was manager, and had stationery as follows:

"NEVER FAIL LAND COMPANY
Owners of
THE NEVER FAIL FARM

Growers of Fancy Bright-Leaf Tobacco, Grain, and Golden-Fleece Cotton

Pineview, Harnett County, N. C.

Branch Office Oxford, N. C.　　　　S. S. Puckett, Manager."

During the time the supplies were furnished plaintiff did not know that Puckett was a tenant. The supplies were all for the farm, Puckett and his tenants, and used on the Never Fail Land Company Farm.

After Puckett OK'd the bills he sent them to Never Fail Land Company at Oxford, N. C. The checks were made direct to Howard-Bobbitt Company, plaintiff. The invoices sued on were OK'd by Puckett and sent to defendant. Puckett was to do the buying for the farm. Puckett informed defendant that he preferred buying from plaintiff, and was told to "go ahead and trade where he wanted to." The plaintiff was never informed of the arrangement between defendant and Puckett, but Puckett told plaintiff the Never Fail Land Company would pay for the supplies. Plaintiff knew nothing about Puckett being a tenant of defendant or that the arrangement for supplies was limited. The President of defendant company testified that the first notice that defendant had of the bills sued on was a letter on 8 December, 1923, and another letter 26 February, 1924, from plaintiff. Both of these letters were answered and it was denied that Puckett was authorized to buy goods on its credit. That the $6,600 was exhausted before the supplies in the present suit were purchased. Puckett was a tenant, not a manager for defendant. That defendant received no invoices for goods for which the suit was brought. The contention of defendants is set forth in its letter to plaintiff dated 8 December, 1923, as follows: "We acknowledge receipt of your letter of 6 December, with enclosure of statement amounting to $475.14 ($476.14) against Never Fail Farms. We are writing you at the first opportunity after receipt of your letter to advise you that we do not owe you anything and that the account in question must have been intended for Mr. S. S. Puckett. Under our agreement with Mr. Puckett we were to advance him certain amounts of money each month from March through August, inclusive. This we have done. As you know, all statements which you have heretofore made out against Mr. Puckett were presented to him and in turn sent to us after Mr. Puckett had OK'd the bills and ordered them charged against his advances. Your statement contains an item of $90.01 as of 30 August, and I am very sorry that you did not include it in your statement to Mr. Puckett for the month of August. We sent you check covering Mr. Puckett's account for that month and do not understand why this item was not included. We are in nowise or under any condition liable or responsible for accounts made by Mr. Puckett except such accounts as are made at our request and with our knowledge and consent. Mr. Puckett occupies the relationship with us as our tenant and pays us only one-fourth of the crops. We are quite sure that Mr. Puckett can arrange to meet this account as soon as the crop which he is interested in has been sold. He is a good fellow and I am sure recognized this obligation, and if given a little time will pay it in full. It is very hard for us to understand why he should ever knowingly permit this statement to be sent to us and I feel quite confident that he will explain it to you when you take it up with him."

Defendant's president testified: That all the checks sent by defendant to plaintiff had on the left-hand margin of the check "for S. S. Puckett account." He further testified: "Mr. Puckett had a right to use $1,100 a month. He had authority to draw on us for $1,100 a month on his account. It was in his name and Never Fail Land Company. We did not notify Howard-Bobbitt Company that this account was limited. It was a matter with Mr. Puckett and Mr. Bobbitt. Did not notify them that the time that we were to furnish them advances had expired, or that the amount we were to furnish had been exhausted or that his limit had been taken up. I told Mr. Puckett he could trade anywhere he wanted to."

The court charged the jury, in part, as follows: "A person is bound by the acts of his agent, if the agent acts within the limits, within the bounds, of his authority conferred upon him by the principal. A principal is likewise bound by the acts of his agent while acting within the apparent scope of his authority, that is, where the principal holds the agent out, or holds a person out, as his agent or knowingly permits him to act as his agent in dealing with others. If he does so, he will be bound by the acts of such agent while acting within the apparent scope of his authority, if such apparent authority is relied upon by such other parties in their dealings with him and the credit is given to the principal." This we consider the only material assignment of error in the record. The contentions of both sides were fairly given by the court below.

*Walker, J.,* in *Latham v. Field,* 163 N. C., p. 360, said: "The rule in regard to agency may be thus stated: A principal is bound by the acts of his agent within the authority he has actually given him, which includes not only the precise act which he expressly authorizes him to do, but also whatever usually belongs to the doing of it, or is necessary to its performance. Beyond that, he is liable for the acts of the agent within the appearance of authority which the principal himself knowingly permits the agent to assume, or which he holds the agent out to the public as possessing. For the acts of his agent, within his express authority, the principal is liable, because the act of the agent is the act of the principal. For the acts of the agent, within the scope of his authority he holds the agent out as having, or knowingly permits him to assume, the principal is made responsible, because to permit him to dispute the authority of the agent in such cases would be to enable him to commit a fraud upon innocent persons. *Bank v. Hay,* 143 N. C., 326; *Law v. Stokes,* 3 Vroom (N. J.), 249; Mechem on Agency, sec. 84. 'The principal is bound by all the acts of his agent within the scope of the authority which he holds him out to the world to possess, although he may have given him more limited private instructions, unknown to the persons dealing with him; and this is founded on the

doctrine that where one or two persons must suffer by the act of a third person, he who has held that person out as worthy of trust and confidence, and as having authority in the matter, shall be bound by it.' *Carmichael v. Buck,* 10 Rich. Law, 332 (70 Am. Dec., 226); Story on Agency, sec. 127. 'Where a person by words or conduct represents or permits it to be represented that another person is his agent, he will be estopped to deny the agency as against third persons who have dealt, on the faith of such representation, with the person so held out as agent, even if no agency existed in fact.' *Trollinger v. Fleer,* 157 N. C., 81; *Metzger v. Whitehurst,* 147 N. C., 171. These cases fairly illustrate this doctrine and define its limits." Mechem on Agency (2d ed.) part sec. 1722-3; Page on Law of Contracts, sec. 1758.

*Hoke, J.,* in *Powell v. Lumber Co.,* 168 N. C., p. 635, speaking to the question, says: "A general agent is said to be one who is authorized to act for his principal in all matters concerning a particular business or employment of a particular nature. Tiffany on Agency, p. 191. And it is the recognized rule that such an agent may usually bind his principal as to all acts within the scope of his agency, including not only the authority actually conferred, but such as is usually 'confided to an agent employed to transact the business which is given him to do,' and it is held that, as to third persons, this real and apparent authority is one and the same, and may not be restricted by special or private instructions of the principal unless the limitations sought to be placed upon it are known to such persons or the act or power in question is of such an unusual character as to put a man of reasonable business prudence upon inquiry as to the existence of the particular authority claimed. *Latham v. Fields,* 163 N. C., 356; *Stephens v. Lumber Co.,* 160 N. C., 107; *Gooding v. Moore,* 150 N. C., pp. 195-198; Tiffany on Agency, pp. 180, 184, 191 *et seq.* The power of an agent, then, to bind his principal may include not only the authority actually conferred, but the authority implied as usual and necessary to the proper performance of the work intrusted to him, and it may be further extended by reason of acts indicating authority which the principal has approved or knowingly or, at times, even negligently permitted the agent to do in the course of his employment. *Law Reporting Co. v. Grain Co.,* 135 Mo., App. Rep., pp. 10-15; 31 Cyc., pp. 1326-1331." *Furniture Co. v. Russell,* 171 N. C., 485; *Ferguson v. Amusement Co., ibid.,* 665; *Brimmer v. Brimmer,* 174 N. C., 439; *Lumber Co. v. Johnson,* 177 N. C., 51; *Cardwell v. Garrison,* 179 N. C., 478; *Strickland v. Kress,* 183 N. C., 536.

We think the charge of the court below correct under the well-settled law of this jurisdiction. We find

No error.