CHARLESTON AND WESTERN CAROLINA RAILWAY COMPANY v. ROBERT G. LASSITER & COMPANY, a CORPORATION, AND LONDON AND LANCASHIRE INDEMNITY COMPANY OF AMERICA.

(Filed 21 November, 1934.)

1. **Principal and Agent C b—Evidence that act ·of agent was within his apparent authority and binding on principal held for jury.**

An indemnity company, by letter to its agent, authorized the agent to write a freight charge bond for a contractor only in the event the agent wrote the contract bond for the contractor on the project for which the freight was shipped. The agent, in violation of his authority contained in the letter, wrote a freight charge bond for the contractor. The railroad company accepting the bond had no knowledge of the limitation on the agent's authority. The license of the indemnity company to do business in this State stated that the agent signing the bond for the company was its duly authorized agent (N. C. Code, 6262, 6288, 6298, 6302), and the bond was written on a form furnished by the company for freight charge bonds and the company's seal was affixed thereto by the agent: *Held*, the agent had apparent authority to sign the bond for the company, and the railroad company was not chargeable with knowledge of the agent's lack of authority, and the granting of the indemnity company's motion as of nonsuit on the ground that it was not bound by its agent's unauthorized act was error.

2. **Same: Estoppel C b—Person first reposing confidence in third party must suffer loss occasioned by third party's misconduct.**

An agent of an indemnity company executed, in behalf of the company, a freight charge bond for a contractor in violation of a limitation upon the agent's authority to write such bond unless the agent also wrote the bond for the principal contract. The indemnity company held the agent out as its general agent, and the bond was executed on a form furnished by the company which was filled in by the agent, and the agent affixed thereto the indemnity company's corporate seal: *Held*, in an action on the bond the indemnity company's motion as of nonsuit on the ground that the agent was without authority to sign the bond was erroneously

granted, the rule applicable being that where one of two innocent parties must suffer loss by the misconduct of a third person, he who first reposes confidence in such third person, and makes it possible for the loss to occur, must bear the loss.

**3. Principal and Agent C b—Principal is bound by acts of agent within his apparent authority but in violation of secret limitation thereof.**

As between the principal and agent, the agent's authority is limited to the authority actually conferred, but as between the principal and a third party dealing with the agent, the principal is bound by acts of the agent within the agent's apparent authority where such third party, in the exercise of reasonable prudence, deals with the agent in reliance upon the agent's apparent authority and has no knowledge that the acts of the agent are in violation of a limitation placed upon the agent by the principal.

**4. Same—Third party dealing with agent in reliance upon agent's apparent authority held not required, as matter of law, to make further inquiry as to agent's actual authority.**

The agent and attorney in fact of defendant indemnity company was clothed by it with apparent authority to execute the indemnity bond in suit. In an action on the bond defendant indemnity company moved for nonsuit on the ground that the agent exceeded his authority, and contended that the obligee of the bond was charged with making inquiry, upon the presentation of the bond by the attorney in fact, which would have disclosed his lack of authority to execute the bond in suit: *Held*, the contention cannot be sustained, and the granting of the nonsuit was error, the obligee of the bond having determined that the act of the agent was within the agent's apparent authority, was not required as a matter of law to inquire further into the agent's actual authority.

APPEAL by plaintiff from *Grady, J.,* at Second June Term, 1934, of WAKE. Reversed.

This is a civil action, brought by plaintiff Charleston and Western Carolina Railway Company against the defendants Robert G. Lassiter & Company and London and Lancashire Indemnity Company of America to recover the sum of $4,407.07, together with interest thereon from 20 June, 1933, until paid, alleged to be due on account of tariff charges on and/or in connection with freight shipments delivered by plaintiff to the defendant Robert G. Lassiter & Company. The defendant Robert G. Lassiter & Company did not answer and on 6 November, 1933, judgment by default final was rendered against it. The defendant London and Lancashire Indemnity Company of America filed answer, and the cause was thereupon transferred to the civil-issue docket for trial of the issues joined. The defendant London and Lancashire Indemnity Company denied liability to plaintiff Charleston and Western Carolina Railway Company under bond executed in its behalf by its agent and attorney in fact, Stacey W. Wade, alleging that the said Stacey W. Wade did not have the power and authority to execute the same.

The action was tried before his Honor, Henry A. Grady, judge presiding, at Second June Term, 1934, of the Superior Court of Wake County, trial by jury having been waived. At the conclusion of all the evidence, the court allowed the motion of defendant London and Lancashire Indemnity Company for judgment of nonsuit, and from judgment upon this ruling the plaintiff excepted, assigned error, and appealed to the Supreme Court. The necessary facts will be set forth in the opinion. In the opinion the London and Lancashire Indemnity Company of America will be called, for short, Indemnity Company.

*Murray Allen for plaintiff.*
*J. M. Broughton for Indemnity Company.*

CLARKSON, J. At the conclusion of all the evidence the defendant Indemnity Company made a motion in the court below for judgment as in case of nonsuit. C. S., 567. The court below sustained this motion, and in this we think there was error.

The part of the bond in question necessary to be set forth in this controversy is as follows: "Know all men by these presents, that we, Robert G. Lassiter & Company, of Oxford, North Carolina, as principal, and London and Lancashire Indemnity Company of America, of Hartford, Conn., as surety, are held and firmly bound unto the Charleston and Western Carolina Railway Company, its successors and/or assigns, hereinafter called the obligee, in the sum of five thousand dollars ($5,000.00), lawful money of the United States of America, for the payment of which, without set-off or counterclaim, we bind ourselves, our heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents. Signed, sealed, and dated this 13 October, A.D. 1931.

"Whereas the obligee has consented to extend to the principal credit of not exceeding ninety-six hours for the payment of tariff charges on and/or in connection with freight shipments, the period of ninety-six hours being as hereinafter construed.

"Now, therefore, the condition of this obligation is such that if the principal shall, within such period of ninety-six hours, pay or cause to be paid to the obligee all such charges, then this obligation to be void; otherwise, to remain in full force and effect, subject, however, to the following express conditions," etc.

The express conditions are not material. The bond is signed as follows: "Robert G. Lassiter & Co., Principal (Corporate Seal), by Geo. R. Goodwin, Vice-President. Attest: H. Wolff, Asst. Secty. London & Lancashire Indemnity Co. of America, Surety. (Corporate seal of said company bearing words 'London & Lancashire Indemnity Company of

America.') Stacey W. Wade & Son (Seal), by Stacey W. Wade, Attorney in Fact."

It is conceded that under the bond Robert G. Lassiter & Company owes the plaintiff Charleston and Western Carolina Railway Company $4,407.07, with interest from 20 June, 1933, until paid. The Indemnity Company contends that it nominated, constituted, and appointed "Stacey W. Wade and/or Louis M. Wade, of Raleigh, North Carolina, its true and lawful agent and attorney in fact, to make, execute, seal, and deliver for and on its behalf, as surety, and as its act and deed." That under the attorney in fact, Stacey W. Wade & Son were given power and authority to execute certain kinds of bonds therein mentioned, but not the one in controversy. In its answer the Indemnity Company said: "That the said bond is accordingly invalid and void so far as this defendant is concerned, and not in any respect binding on this defendant."

The agency and attorney-in-fact bond to Stacey W. Wade & Son is dated 18 March, 1931. On 4 May, 1931, Stacey W. Wade & Son received from the Indemnity Company, through its agent at Richmond, Va., a letter, in part as follows: "Re: R. G. Lassiter & Company. Please be advised that we are willing to execute contract bonds for this concern up to $100,000.00 without reference to this office. On larger projects we ask that you secure all possible information with reference to the project and phone or write us for authorization.

"$100,000.00 blanket authorization on this concern without reference to the company may seem to be very small to you, but in view of the fact that this concern represents an entirely new outfit so far as we are concerned, we trust that it will be satisfactory.

"With reference to Freight Charge Bonds, we find it is the usual practice for the company which executes the contract bond to execute the freight charge bonds necessary in the performance of the contract bonded by them under their contract bond. We would not care to execute any such bonds in connection with contracts bonded by some other company, though we will take care of the freight charge bonds executed on our own projects, of course."

The bond in controversy was thereafter issued on 13 October, 1931. Stacey W. Wade testified, in part: "I had no authority from the company to execute bonds other than the authority contained in the power of attorney by writing. I was under the impression I had authority to execute the bond. That is why I executed it. I did not at the time of the execution of this bond give any information whatever to the Charleston and Western Carolina Railway Company as to any limitations on my authority which would prevent the execution of that bond by me in behalf of the London and Lancashire Indemnity Company. . . . Q.

Did you hold yourself out, Mr. Wade, as having authority to write bonds generally for the London and Lancashire Indemnity Company? A. Yes, sir."

We have examined the original bond in evidence, in the possession of the plaintiff and the subject of this controversy. (1) It is a printed form with blanks to be filled in, which clearly indicates that it was furnished by defendant Indemnity Company to its agent and attorney in fact, Stacey W. Wade & Son. (2) The printed form has on it "A & B—1300—4-31—1 M." "Form 3351, Revised 10 April, 1931." (3) "Indemnity Bond for Freight Credits." (4) At the bottom of the bond is a note printed, in part as follows: "Bond must be forwarded to the Treasurer of the Railroad Company for file after being executed. Bond must be for the maximum amount of the credit." (5) The company's name indicated it was an "indemnity company." (6) The agent and attorney in fact, Stacey W. Wade & Son, had a seal of the company, and the seal impression is on the bond, with this on it: "London & Lancashire Indemnity Company of America." The bond was given to plaintiff and it relied on it, and no knowledge of the limited or restricted authority of the agent and attorney in fact of the Indemnity Company was brought to the attention of plaintiff.

In two aspects, we think the judgment of nonsuit in the court below should be overruled. First: The agent and attorney in fact, Stacey W. Wade & Son, were acting within the scope of their apparent authority, and had the form from the Indemnity Company, which was filled out, signed, and sealed by Stacey W. Wade & Son, and which, according to the printed form, permitted them to do what they did do—execute an "Indemnity Bond for Freight Charges" to plaintiff. The plaintiff had no notice of the lack of authority.

Second: Where one of two persons must suffer loss by the fraud or misconduct of a third person, he who first reposes a confidence or by his negligent conduct made it possible for the loss to occur, must bear the loss.

On the first aspect, the law is as follows, as stated in *Bank v. Hay*, 143 N. C., 326 (330-331): "The principal is held to be liable upon a contract duly made by his agent with a third person: (1) When the agent acts within the scope of his actual authority. (2) When the contract, although unauthorized, has been ratified. (3) When the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his authority, the term 'apparent authority' including the power to do whatever is usually done and necessary to be done in order to carry into effect the principal power conferred upon the agent and to transact the business or to execute the commission which has been entrusted to him; and the principal cannot restrict his own liability for acts of his agent which are within the scope

of his apparent authority by limitations thereon, of which the person dealing with his agent has not notice. The principal may also, in certain cases, be estopped to deny that a person is his agent and clothed with competent authority, or that his agent has acted within the scope of his authority which the nature of the particular transaction makes it necessary for him to have. Tiffany on Agency, 180, *et seq.; Biggs v. Ins. Co.,* 88 N. C., 141."

Speaking to the subject in *Bowers v. Lumber Co.,* 152 N. C., 604 (606): "The Guaranty and Surety Company entrusted Willard and Vines with a bond, to which its corporate seal had been affixed, and it was licensed to do business, that is, to execute an indemnity bond, in this State. When this was done, the Guaranty and Surety Company put it in the power of Willard and Vines to induce others to believe that they had the power and authority to execute a bond in its behalf as surety, even if the signatures of the said agents were necessary to make it a valid bond as against the company after it had thus affixed its corporate seal and its corporate name had been signed to the bond."

The Indemnity Company had license signed by the Insurance Commissioner, as follows: "Date: 20 April, 1931. . . . The London & Lancashire Ind. Insurance Company of New York City has been licensed for the year ending 1 April, 1932, and Stacey W. Wade of Raleigh, North Carolina, is the duly authorized and licensed agent for said company." A similar license was issued to Louis M. Wade, as agent. See North Carolina Code of 1931 (Michie), secs. 6262, 6288, 6298, and 6302.

This is not an action between a principal and agent where the scope of the agent's authority is the authority actually conferred upon him by the principal, but this is an action by a third party and a different principle is applicable. Confusion has arisen in the decisions on the subject when the distinction is not kept in mind.

The principle applicable to the facts in this action is also set forth in *R. R. v. Smitherman,* 178 N. C., 595 (598-9), as follows: "While as between the *principal and agent* the scope of the latter's authority is *that authority which is actually conferred upon him by his principal,* which may be limited by *secret instructions and restrictions,* such instructions and restrictions do not affect third persons ignorant thereof, and *as between the principal and third persons,* the mutual rights and liabilities *are governed by* the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, and which the principal is estopped to deny. *The apparent authority, so far as third persons are concerned, is the real authority,* and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obliga-

tion to inquire into the agent's actual authority. The authority must, however, have been actually apparent to the third person, who, in order to avail himself of rights thereunder, *must have dealt with the agent in reliance thereon, in good faith and in the exercise of reasonable prudence,* in which case the principal will be bound by the acts of the agent performed in the usual and customary mode of doing such business, *although he may have acted in violation of private instruction, for such acts are within the apparent scope of his authority.*" (Italics ours.) *Trollinger v. Fleer,* 157 N. C., 81; *Powell v. Lumber Co.,* 168 N. C., 632; *Furniture Co. v. Bussell,* 171 N. C., 474; *Cardwell v. Garrison,* 179 N. C., 476; *Bobbitt Co. v. Land Co.,* 191 N. C., 323; *Sears, Roebuck & Co. v. Banking Co.,* 191 N. C., 500; *Bank v. Sklut,* 198 N. C., 589.

Page, in his valuable work on Contracts, Vol. 3, 2d Edition, part sec. 1760, at p. 3018, states the matter thus: "Outside of the class of public agents, the actual authority conferred by a principal *upon his agent is practically inaccessible to the public at large.* Accordingly, persons who do not know what the *agent's authority really is are justified in dealing with him upon the assumption that he has the authority which the principal indicates by his conduct that the agent possesses.* Thus dealing with the agent, such persons may hold the principal on contracts *outside the real authority of the agent, but inside his apparent authority.*" (Italics ours.)

In Couch Cyc. of Ins. Law, Vol. 2 (1929), pp. 1479-80, and part of sec. 517, is in full accord with the decisions of this and other courts on the subject. We find: "It is within the power of an insurance company, as between itself and its agent, to define and limit the powers of the latter, but it is equally well settled that the rights of innocent third parties dealing with an agent, within the apparent scope of his authority, cannot be affected by private instructions to such agent, of which they have no notice or knowledge, or by secret limitations upon his authority. In fact, it is clear that insurance companies are responsible for the acts of their agents within the general scope of their business entrusted to their care, and that no limitations of their authority will be binding on parties with whom they deal, which are not brought to the knowledge of those parties, especially where such persons rely in good faith upon his apparent authority. Undoubtedly, if an officer of an insurance company assumes to possess certain powers, and the nature of his employment justifies the assumption of authority, and the party dealing with him has no notice of want of the claimed authority, and there is nothing to warrant an inference to the contrary, the company is bound, even though he had no such power as claimed. And it would seem to be especially true, as it has been held, that limitations upon the powers of, or secret instructions to, a general agent do not bind third

persons dealing with him without notice thereof; also, that it is no defense that the general agent departed from private instructions when acting within the general scope of his authority, unless such instructions be made public, or the insured has notice, or unless the party dealing with the agent is, by reason of the attendant circumstances, or something in the nature of the business, or by custom, or by a course of dealing, or otherwise, put upon inquiry as to the exact limits of the agent's authority." *Bank v. Winder,* 198 N. C., 18; 7 R. C. L., "Corporations," secs. 621-622, pp. 625-626; 2 C. J., pp. 566-567-568, secs. 208-209.

On the second aspect the law is as follows, as stated in *Railroad v. Kitchin,* 91 N. C., 39 (44): "Where one of two persons must suffer loss by the fraud or misconduct of a third person, he who first reposes the confidence, or by his negligent conduct made it possible for the loss to occur, must bear the loss." *Barnes v. Lewis,* 73 N. C., 138; *Vass v. Riddick,* 89 N. C., 6; *Bank v. Liles,* 197 N. C., 413 (418); *Bank v. Clark,* 198 N. C., 169 (173); *Lightner v. Knights of King Solomon,* 199 N. C., 525 (528).

The defendant Indemnity Company contends, "The plaintiff was clearly charged with making an inquiry upon the presentation of a bond by an attorney in fact, which would have disclosed beyond any question that the agent had no authority whatever to execute the bond involved in this suit." We cannot so hold. The authorities above cited are to the contrary. The Indemnity Company made Stacey W. Wade & Son "its true and lawful agent and attorney in fact" broader than the Indemnity Company now contends. In this kind of insurance agency, we do not think the contention of the Indemnity Company well taken. *Bowers v. Lumber Co., supra.*

There are other matters discussed by the litigants, but we do not think them material to this controversy. For the reasons given, the judgment of the court below is

Reversed.