STACY, C. J., and BROGDEN, J., dissent.
This is an action brought by plaintiff against defendant to recover $5,000 on an alleged fire insurance policy issued by defendant to plaintiff. The issues submitted to the jury, and their answers thereto, are as follows: "(1) Did the plaintiff and defendant enter into the contract of insurance, as alleged in the complaint? A. `Yes.' (2) If so, did the plaintiff, at the time of the issuance of such contract, have other and additional fire insurance outstanding on its stock of merchandise, as alleged in the answer? A. `Yes' (by consent). (3) If so, did the defendant, at the time of making such contract, have knowledge and notice of the existence of other and additional fire insurance on said stock of goods, as alleged in the reply? A. `Yes.' (4) What amount, if anything, is the plaintiff entitled to recover of the defendant? A. `$5,000, with interest from 1 March, 1932.'"
There was a judgment rendered by the court below in accordance with the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.
At the close of plaintiff's evidence, and at the close of all evidence, the defendant in the court below made motions for judgment as in case of nonsuit. C. S., 567. The court below overruled these motions and in this we can see no error. We think the vital question in this controversy: Was there a contract entered into between plaintiff and defendant in reference to the $5,000 policy of insurance for which plaintiff sues to recover from the defendant in this action? We think so. The court below on this aspect charged the jury correctly: "A contract of insurance is the same as any other contract. That is, in order to constitute a contract of insurance there must be an offer and an acceptance. A contract is an agreement between two or more persons upon sufficient consideration to do or to refrain from doing a particular act."
In Overall Co. v. Holmes, 186 N.C. 428 (431-2), a contract, citing numerous authorities, is defined as follows: "A contract is `an agreement, upon sufficient consideration, to do or not to do a particular thing.' 2 Blackstone Com., p. 442. There is no contract unless the parties assent to the same thing in the same sense. A contract is the agreement of two minds — the coming together of two minds on a thing done or to be done. `A contract, express or implied, executed or executory, results from the concurrence of minds of two or more persons, and its legal consequences are not dependent upon the impressions or understandings of one alone of the parties to it. It is not what either thinks, but what both agree.'"Jernigan v. Insurance Co., 202 N.C. 677 (679).
It is well settled that where the contract is not ambiguous, the construction is a matter of law for the courts to determine. Courts will generally adopt a party's construction of a contract. Attendant circumstances, party's relation and object in view should be considered, if necessary, in interpreting a written contract. Neither court nor jury may disregard a contract expressed in plain and unambiguous language. The courts' province is to construe, not make contracts for parties, and courts cannot relieve a party from a contract because it is a hard one. An agent can, under certain circumstances, contract for the principal.
Hoke, J., in Powell v. Lumber Co., 168 N.C. p. 635, speaking to the subject, says: "A general agent is said to be one who is authorized to act for his principal in all matters concerning a particular business or employment of a particular nature. Tiffany on Agency, p. 191. And it is the recognized rule that such an agent may usually bind his principal as to all acts within the scope of his agency, including not only the authority actually conferred, but such as is usually `confided to an agent employed to transact the business which is given him to do,' and it is held that, as to third persons, this real and apparent authority is one and the same, and may not be restricted by special or private instructions *Page 271 
of the principal unless the limitations sought to be placed upon it are known to such persons or the act or power in question is of such an unusual character as to put a man of reasonable business prudence upon inquiry as to the existence of the particular authority claimed (citing authorities). The power of an agent, then, to bind his principal may include not only the authority actually conferred, but the authority implied as usual and necessary to the proper performance of the work entrusted to him, and it may be further extended by reason of acts indicating authority, which the principal has approved or knowingly, or at times, even negligently permitted the agent to do in the course of his employment," citing numerous authorities. Bobbitt v. Land Co., 191 N.C. 323 (328); Maxwell v.Distributing Co., 204 N.C. 309 (317-18); Charleston and Western CarolinaRailway Co. v. Robt. G. Lassiter Co., a Corporation, et al., 207 N.C. 408. The record states the corporation in some places as Hagood Realty and Insurance Co., Inc., and also The Hagood Realty Co., Inc., we will call it the Hagood Realty Company.
About 3 o'clock in the morning of 9 December, 1931, the plaintiff's stock of goods in its store at New Bern, North Carolina, value at the time of the fire about $80,000, was practically totally destroyed; only a salvage of about $50.00. Including the $5,000, the amount the insurance companies carried on the stock was $35,000. This action is brought to recover on the $5,000 policy of insurance on the stock of goods which plaintiff contended it held in the defendant company. It may not be amiss to say that the fact of the fire cannot determine the controversy, it is the contract between the parties. The different aspects of evidence bearing on the contract suggest certain questions involved. Did the Hagood Realty Company, under the terms of the contract entered into between it and the plaintiff in March, 1931, have the authority to issue the policy of insurance in the defendant company, and did plaintiff ratify the transaction for which this action is instituted? We think so. The facts in evidence bearing on this aspect: The Hagood Realty Company, in March, 1931, was a going concern in New Bern, North Carolina, dealing in real estate and insurance business. B. F. Hagood was its president, W. Mac Jordan was the manager of plaintiff's store at New Bern, North Carolina, which opened for business about 10 March, 1931. It had a full stock of goods when the store was opened, and merchandise was coming in every day. Immediately after the store opened, Jordan was instructed by plaintiff to insure the stock of goods for approximately $35,000; he met Hagood about the middle of March, 1931. Jordan testified, in part: "Q. What conversation, if any, did you have with him with reference to covering this stock of goods with fire insurance? A. I instructed Mr. Hagood that I wished him to insure *Page 272 us for $15,000; that I would leave the companies up to him; that I wantedto be fully insured for one year. Mr. Hagood was president of the Hagood Realty Company, which was engaged in real estate and insurance together. Q. Subsequent to this conversation you have mentioned, did the Hagood Realty Company deliver to you policy of fire insurance on Belk's stock there in New Bern? A. Yes. The amount of the policies delivered to me by the Hagood Realty Company was $15,000. I don't recall the names of the fire insurance companies that issued the policies." (Italics ours.)
The premiums were paid by plaintiff company to the Hagood Realty Company — policies for $5,000 each in the Great National, United Fireman, and Royal Exchange for one year were issued and turned over to plaintiff on the stock of goods. The Hagood Realty Company was agent for all these companies. Hagood corroborated Jordan: "He told me to write $15,000 for oneyear. He did not tell me what companies to write it in. Q. What was said, if anything, as to the companies? A. Nothing was mentioned about the companies, not by him. No, I did not mention anything about the companies. Q. After that conversation, what was done by you or by the Hagood Realty Company with reference to issuing fire insurance on this stock of goods? A. We wrote $15,000 — three different policies. Q. Did you render a bill to the Belk Store for the premium on the three policies? A. Yes. Q. Was that bill paid? A. Yes."
On 8 April, 1931, the George Washington Fire Insurance Company, the defendant, appointed the Hagood Realty Company, agent, to write insurance for its company: "With full power, during the pleasure of the company, to receive proposals for insurance against loss or damage on property located in New Bern, North Carolina, and vicinity, to receive premiums therefor,and to countersign and issue policies of insurance thereon, signed by thepresident and secretary of the said George Washington Fire InsuranceCompany, and consent to transfers thereof, make endorsements thereon, and renew the same, subject to the rules and regulations of said company, and to such instructions as may from time to time be given by its officers, general or special agents."
Hagood testified: "After the delivery of the power of attorney to me, the defendant delivered into my possession certain of its policy forms. These were delivered during that month. In other words, the stuff came along about the same time. I think I received about twenty-five. Under that power of attorney the Hagood Realty Company issued policies of insurance on behalf of the George Washington Fire Insurance Company. Q. How many of these policies were issued prior to 1 December, 1931? A. I would say some thirty — odd." *Page 273 
On 5 December, 1931, the Hagood Realty Company had information that the Great National Insurance Company was broke (the State Insurance Commissioner had informed it of this fact). Hagood further testified: "Q. Now, please state what, if anything, was done by you or by the Hagood Realty Company concerning the cancellation of this $5,000 National Policy? A. We canceled that on our books and issued $5,000 in the George Washington Fire Insurance Company. That was done on 5 December, 1931, and the George Washington policy was issued on the same date. This George Washington policy is the policy which we issued on 5 December, 1931. Mr. Hall issued the policy at my instructions. I saw him issue it. I know his handwriting. The name of Charles H. Hall appearing on this policy is his genuine signature." He was manager of the Insurance Department. The Hagood Realty Company canceled the Great National Insurance Company's policy and issued immediately a policy in the defendant company to plaintiff for $5,000, and wrote the following letter: "George Washington Fire Insurance Company, Greensboro, North Carolina. Hagood Realty Co., Inc., Agents, Mr. Mac Jordan, Mgr. Belk's Department Stores, New Bern, N.C. 5 December, 1931. Dear Sir: We enclose George Washington Policy No. 173160. This policy is to replace Great National Policy No. 2409, this is being done by order of the State Insurance Commissioner. Please return Great National Policy No. 2409. Very truly yours, Hagood Realty Company, Chas. H. Hall, Insurance Department." The envelope bearing the following address: "Belk's Department Stores, New Bern, N.C. Mr. Mac Jordan, Mgr.," and bearing postmark as follows: "New Bern, N.C. Dec. 7, 1931, 10 P.M." The upper left-hand corner of the envelope is torn off so that no return address appears on the envelope. The right-hand end of the envelope is cut so that no stamp appears, although there are six black marks appearing to be the ends of a stamp cancellation mark. The contention of defendant was to the effect that no such transaction ever occurred at the time and in the way and manner as alleged by plaintiff. This was left to the jury under proper instructions by the court below. The fire occurred about 3 o'clock on Wednesday morning, 9 December, after the letter and policy were mailed to plaintiff, as contended by it. On the afternoon of 9 December, 1931, Jordan testified, in part: "Yes, the first time I saw this George Washington Fire Insurance policy was the afternoon of 9 December, after the fire. It was contained in the envelope that has been put in evidence. At the time the envelope came to me, it was unopened. Mr. Brooks and I opened it that afternoon. Mr. Brooks said he got it out of the post office. I imagine he got it out of the post office a few minutes before." *Page 274 
The Hagood Realty Company, on 9 December, 1931, gave full notice to defendant of the loss. H. A. McLaurin, auditor for plaintiff, testified in part: "As I remember, he brought back all policies that were with the papers. These included the George Washington Fire Insurance Policy and the Great National Insurance Policy. I had no conversation that I remember with either Mr. Hagood or Mr. Mac Jordan about these policies. I did not do anything about them except keep them in my desk or safe, where, in case the others were paid, I would return them to the companies when paid. I filed proof of loss with the George Washington Fire Insurance Company. We did not file proof of loss with the Great National. Q. Why did you not file one with the Great National? A. There were loss forms prepared and sent to us for the George Washington Fire Insurance Company for execution, to be signed by Mr. Belk. After I had these signed, they were returned to the proper parties and there was no proof of loss on the Great National policy. We elected not to file proof of loss with the Great National Fire Insurance Company."
The principle governing the facts here are fully set forth in 2 Couch Cyc. of Insurance Law, part of section 480 (pp. 1361-2-3-4): "If a party insures for another as principal, without the latter's prior authority or consent, the intended principal may, if the principal has not previously withdrawn from the contract, adopt and ratify the unauthorized act, in which case the ratification is equivalent to a prior authority, and this, according to the weight of authority, even after loss, or payment of the loss to the agent, in which case the agent receiving the money holds it for the owner's benefit, and notwithstanding the premium was not paid prior to loss, although the contrary also has been held, as to the latter point. The party ratifying must be fully apprised of his rights, and have full knowledge of all the material facts; otherwise, the confirmation cannot be held binding. Again, an insurance policy can only be ratified by the person on whose account it was intentionally made. And the ratification must be established, the mere fact that the contract is beneficial not being conclusive. However, a neglect on the part of the principal to disaffirm an agent's act, on receiving notice thereof from the agent, raises a presumption of a ratification of what the agent has done, although such notice, in order for subsequent silence to effect a ratification, must not be delayed until an election to approve or disapprove would be attended with no advantage to the principal. And although the insured cannot ratify in part and reject in part, but must adopt as a whole, or not at all, yet there may be a conditional ratification dependent upon a contingency.Acceptance and retention by the insured of policies procured by its agent,as a substitute for others previously obtained in a company deemedunstable, ratified the agent's act *Page 275 and precludes recovery on the original policies." (Italics ours.) Rose InnCorp. v. National Union Fire Ins. Co. et al. (N. Y.), 179 N.E. Rep., 256.
The defendant, at the conclusion of plaintiff's evidence, introduced as a witness, J. W. McAllister, who testified as follows: "On 23 November, 1931, I was president of the George Washington Fire Insurance Company. As president, on that date, I wrote the Hagood Realty Company a letter. This is a copy of it: `George Washington Fire Insurance Company, Greensboro, North Carolina, 23 November, 1931, Hagood Realty Company, New Bern, North Carolina. Dear Sirs: Our Special Agent, Mr. Mowery, wrote you on November 16th, also wired you on November 21st in regard to payment of your balances due the George Washington Fire Insurance Company. As we have no reply to either of these communications, we are going to have to ask that you not write any more business in the George Washington until your account is brought up to date. If you cannot send us a check promptly in payment of these balances, we must ask you to cancel sufficient liability to clear the account. We are sorry indeed to have to take the above action, but we cannot afford to have our balances accumulate in this manner, nor can we afford to have our special agents make expensive trips to New Bern in order to collect these accounts. We trust that you will give this matter your immediate attention and let us have prompt reply. Very truly yours, President. JWMcA/W.'"
"Defendant offers in evidence paragraph No. 2 of the amendment to the answer, which is as follows: `That at the time of the alleged issuance of the policy, which is the subject of this action, the plaintiff had outstanding upon its stock of merchandise insurance for the following amounts, in the following named companies, disregarding the policy in the Great National Fire Insurance Company referred to in the complaint: Northwestern Mutual Fire Insurance Company, $10,000; Piedmont Fire Insurance Company, $10,000; Royal Exchange Assurance Company, $5,000; Dixie Fire Insurance Company, $5,000.' Defendant also offered in evidence the paragraph of the reply admitting that the plaintiff had $25,000 of other insurance." On the first aspect, the plaintiff introduced evidence to the effect that at the time the Hagood Realty Company issued the policy in defendant's company to plaintiff, it had a power of attorney from defendant, giving authority, and the policies of insurance the company sent it from defendant were not recalled until after the fire.
Hagood testified: "Q. How many of these policies were issued prior to 1 December, 1931? A. I would say some thirty-odd. Someone asked me in person to return the policy forms. The request was made on 11 December, 1931, by Wakefield Mowery. I turned the forms over to *Page 276 
him and he gave me a receipt for them. I have the receipt here: `George Washington Fire Insurance Company, Greensboro, North Carolina. Hagood Realty Co., Agents, New Bern, North Carolina, December 11, 1931. Received of Hagood Realty Co. of New Bern, North Carolina, George Washington Fire Insurance Company Policies Nos. 173161 to 173175 inclusively, and Nos. FT6702 to FT6725 inclusively. Wakefield Mowery, Spec. Agt., Wakefield Mowery.'"
After receiving the letter of 23 November, 1931, Hagood testified: "I sent them a check the next day and that relieved so I could go ahead again. . . . You see when I paid that check that relieved that. Yes, the check was in payment of my June and July account. The date of the check is 24 November. There is another check that paid the August and September bills. Here it is. This check of 24 November, $48.12, was in payment of the June and July account. Yes, at that time there was still unpaid the August and September accounts. The August account, $15.24, and September account, $2.84, so on 24 November, 1931, there was outstanding and unpaid, after I had sent the $48.12 and the $18.08 check representing the August and September balances. I sent a check for August and September balances on 9 December; yes, the paper which you show me is that check, and the amount is $18.08." The witness identified these two checks, one for $48.12 and the other for $18.08. Both of these checks were cashed by the defendant.
The policy issued in the George Washington Fire Insurance Company, the defendant, by the Hagood Realty Company to plaintiff, was numbered 173160 — amount $5,000, rate 1.716, premium $21.45. On 11 March, 1932, the defendant sent a statement headed "Account Current" to agency at New Bern, North Carolina, Hagood Realty Company, Agent. In this statement, among some four other policies issued by the Hagood Realty Company for insurance in defendant company, is the premium for the very policy in litigation on which the defendant showed that the Hagood Realty Company owed its total in premiums, $39.22, on this statement is No. 173160, amount insured $5,000, gross premium 20 per cent, $21.45. With Hagood's testimony and this"Account Current, " the question of Hagood's agency was properly left to the jury. The "Account Current" was no routine matter, it was some evidence. It is easily distinguishable from the case of Sellers v.Insurance Co., 205 N.C. 355. In that case the policy was forfeited under the terms of the contract. It is said at p. 357: "Mailing notice of the regular quarterly premium due 12 August, 1932, in compliance with the provisions of the statute, was but a routine matter, and did not have the effect of waiving the intervening forfeiture and reviving the policy." It was further in evidence that Hagood offered to pay the premium to the defendant after the fire, but Mowery, agent for defendant, refused to accept it. *Page 277 
In regard to the other aspect, Hagood testified: "Q. On cross-examination you mentioned the fact that you had not called on Belk Brothers for any premium in connection with the George Washington policy, will you explain why you didn't call on the plaintiff for any additional premium on account of the George Washington policy? A. Because they had already paid a year's premium. Q. Prior to 5 December, 1931, state whether you knew other fire insurance was outstanding on this stock of goods. A. Yes. I cannot name the policies they had that were outstanding when we wrote the George Washington policy. I didn't know, on 5 December, 1931, how much insurance they had. I knew they had other insurance, but I didn't know how much. The Hagood Realty Company and the George Washington Fire Insurance Company had no agreement as to the length of time within which the Hagood Realty Company could make settlement for premiums on policies."
The defendant contends that the suit policy is void because of concurrent insurance not noted thereon. We cannot so hold. The policy stated "it is understood and agreed that no insurance in addition is permitted to this policy unless the total insurance, including this policy, is entered in paragraph above." In Short v. LaFayette Life Insurance Co.,194 N.C. 649 (650), quoting a wealth of authorities, speaking to the subject, we find: "In Insurance Co. v. Grady, 185 N.C. 348, 353: `Another principle recognized in this jurisdiction and pertinent to the inquiry is that, in the absence of fraud or collusion between the insured and the agent, the knowledge of the agent, when acting within the scope of the powers entrusted to him, will be imputed to the company, though a direct stipulation to the contrary appears in the policy, or the application for the same." Laughinghouse v. Insurance Co., 200 N.C. 434; Colson v.Assurance Co., 207 N.C. 581.
Before the policy of 5 December, 1931, was issued to plaintiff in defendant company, the Hagood Realty Company knew that other insurance was on the plaintiff's goods. The amount was $35,000 and $15,000 of that sum issued through the Hagood Realty Company agency. The present policy being $5,000 and the loss was $80,000. The position of defendant is untenable from the facts and circumstances of this case. There was no semblance of bad faith in the matter. There was no over-insuring. The general knowledge of Hagood indicated that the goods insured were far in excess of the insurance on the property. Midkiff v. Insurance Co., 197 N.C. 139 (142).
It is contended by defendant that the Great National Insurance policy is not validly canceled. If this was correct, we do not see how it concerns defendant. This is not an action between plaintiff and the Great National Fire Insurance Company. A policy was issued in defendant's *Page 278 
company to plaintiff, and plaintiff claims under that policy, not under the Great National policy, which, it is not disputed, was broke, and the Hagood Realty Company canceled it as its agent, and this was ratified by plaintiff, and Hagood Realty Company was warranted in cancelling same, acting on the information from the State Insurance Commissioner and to carry out its contract with plaintiff "to be fully insured for one year."
We think the facts in this case are distinguishable from Jernigan v.Insurance Co., 202 N.C. 677. In the Jernigan case, supra, at p. 680, it expressly says: "The foregoing cases and many others of like tenor fully recognize the right of the insured to ratify the action of the local agent in issuing the substituted policy, for the reason that both policies were obviously issued for his benefit. Nevertheless, in the case at bar, the insured stated that she `was looking to the National Union Fire Insurance Company, to whom she had paid her premium, to pay the loss and damage which she had sustained.' The result is that the National Union policy, not having been properly canceled, was in full force at the time of the fire, and the local agent, without the knowledge or consent of the plaintiff, had no authority to issue the Yorkshire policy. Moreover, as the insured has not ratified the issuance of the Yorkshire policy, she is entitled to recover upon the first policy issued."
We do not think the conduct of Hagood Realty Company in this transaction was inconsistent with the duties which it owed to the companies, or such a dual agency that would taint the transaction. The agent did not assume incompatible or conflicting duties. The duties are such as are usually recognized in every-day transactions with insurance agencies. "There was no bad faith." The defendant contends that the policy was ineffective as a contract, as it was incomplete in material respects when mailed and received. We cannot see how defendant can complain; it contends that there was no valid contract of insurance in any respect. It also contends that the plaintiff's name is "Belk's Department Stores of New Bern, North Carolina, Incorporated." The assured named in the policy is the "Belk's Department Store." Defendant did not in its answer make any such contention. Plaintiff was a corporation, and this was admitted in defendant's answer. If the full name of the corporation is not set out in the policy, only "Belk's Department Store," the balance can be treated as surplusage, as the policy was received by the Belk's Department Store of New Bern, North Carolina, Incorporated, and intended for it. If defendant had set up this defense, the plaintiff could have answered and set up mutual mistake, and had the full name inserted in the policy. The contention comes too late.
We see no error in refusing the prayers for instruction tendered by defendants, nor any error in the charge of the court below. We think *Page 279 
the issues submitted by the court below determinative of the controversy and there was no error in not submitting to the jury the issues submitted by the defendant. The court below, in its charge to the jury on the issues submitted, covered every aspect set forth in the issues tendered by defendant. In the charge of the court below, the contentions of both sides were carefully and accurately given. It may not be amiss to say that in the many important legal questions involved in this controversy, the court below gave an unusually clear and accurate charge of the law applicable to the facts. The jury has found the issues for plaintiff and against defendant.
In the record we find no prejudicial or reversible error.
No error.
STACY, C. J., and BROGDEN, J., dissent.