**HOME INS. CO. v. CAMPBELL MFG. CO.**
No. 3752.

Circuit Court of Appeals, Fourth Circuit.
Oct. 8, 1935.

R. R. Williams, of Asheville, N. C., for appellant.

Walter C. Feimster and Jesse C. Sigmon, both of Newton, N. C., for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and CHESNUT, District Judge.

CHESNUT, District Judge.

This case presents a question of fire insurance law—whether a policy for $10,000 issued by the appellant, was reduced in legal liability to $5,000 by the substitution of two new policies in other companies each for $2,500 prior to the fire. Upon trial in a suit at law on the original policy for $10,000, the District Judge determined the question in the negative and directed a verdict for the plaintiff (the appellee here) for the disputed amount, $5,000. The Home Insurance Company, the insurer, has appealed.

The facts which are not disputed may be briefly stated. The plaintiff is a North Carolina corporation which owned a furniture factory situated at Maiden, N. C. Its president, J. S. Campbell, acted for it in the matter of the insurance. Sometime before the fire he instructed G. E. Mauney, a fire insurance policy writing agent and broker, to insure and keep the corporation's property insured in the amount of $35,000. Mauney, as policy writing agent for The Home and other fire insurance companies, and as broker, issued or obtained policies to the insured in that amount, including the policy of the Home Insurance Company for $10,000. On June 27, 1932, the Home requested Mauney to effect immediate cancellation of its policy. Mauney did not give the insured the formal written five days' notice of cancellation expressly provided for in the policy, but orally advised Campbell of the situation and said he would at once try to replace the insurance in other companies, and that he had already succeeded in replacing $2,500 of it and expected to replace more very shortly. Campbell assented to this and instructed Mauney to keep $35,000 of insurance in force. Before the fire occurred on July 4, 1932, Mauney had succeeded in replacing $5,000 of the Home policy by securing acceptance of liability by the Insurance Company of North America in the amount of $2,500 and by the North Carolina Home Insurance Company in the same amount. Mauney also before the fire notified the State Agent of The Home of what he was doing. The policies were in the possession of a mortgagee whose rights are not now involved as the mortgage has been paid. After the fire at a conference attended by Campbell and representatives of most of the Insurance Companies, Mauney stated what had been done and received the express approval and ratification of his actions by all present, including Campbell. At this conference it was definitely stated that the total insurance in force was $35,000, including only $5,000 in The Home Insurance Company. As the representatives of the fire insurance companies were satisfied that the amount of the loss was not less than the total insurance there was no demand for or insistence upon an appraisal of the amount of the loss. On August 6, 1932, the insured by J. S. Campbell, its president, filed with the several insurance companies a sworn proof of loss as required by the policies in which the total insurance was listed at $35,000, including the Home policy at $5,000 and

the Insurance Company of North America in the amount of $2,500 and the North Carolina Home Insurance Company in the amount of $2,500. Thereafter in due course all the companies (other than the Home) paid the amounts of their respective policies with the exception that, for some reason not clearly appearing in the record, the insured, in compromise accepted $2,000 instead of $2,500 from the North Carolina Home Insurance Company.

In the course of negotiations for the adjustment and payment of the loss Campbell, under date of August 24, 1932, formally stated in writing that before the fire he had authorized Mauney, as the appellee's agent, to replace elsewhere the $10,000 policy which one of the companies desired to cancel and to keep the factory protected by fire insurance at all times to an amount not exceeding $35,000. And under date of September 14, 1932, the appellee by its Secretary and Treasurer wrote to its adjuster saying: "Am inclosing the two insurance policies of $2500 each which, according to our understanding, was to take the place of $5,000 of the $10,000 policy which was issued by the Home Insurance Company, * * * and inclosing the endorsement from Mr. Mauney, agent, showing that the two $2500.00 policies were intended to reduce the Home Insurance Company's policy from $10,000.00 to $5,000.00." Subsequently, on October 24, 1932, more than sixty days after the fire, Campbell filed another proof of loss with The Home Insurance Company in which he listed the total insurance as $40,000, including the Home policy at $10,000. The only explanation given for this change in position was the oral explanation of Campbell as a witness at the trial, that previously he had been under the impression that the Home policy had been validly reduced and that he had subsequently been informed to the contrary, as it had not been so endorsed in writing. The Home tendered to the insured the amount of its admitted liability, but it was refused, and when the suit was brought claiming the full amount of $10,000, it paid into court its admitted liability in the amount of $5,000 (which was received by the plaintiff without prejudice), and also subsequently tendered the return of that portion of the whole premium unearned by reason of the reduction in the amount of the policy.

■ It will be noted that in the transactions relating to the insurance both before and after the fire, Mauney was acting in the dual capacity of policy writing agent for The Home Insurance Company and also as agent for the insured. This is very customary in fire insurance practice and is legally unobjectionable where the agent acts in entire good faith and with due authority from both principals. Richards on Insurance (4th Ed.) p. 453; May v. Hartford Fire Ins. Co., 297 F. 997, 998 (C. C. A. 2); Miller v. American Ins. Co. (D. C.) 29 F.(2d) 291, 294; Belk's Dept. Store v. Insurance Co., 208 N. C. 267, 268, 180 S. E. 63, 70; Federal Ins. Co. v. Sydeman, 82 N. H. 482, 136 A. 136; Note 83 A. L. R. 307, 309. There is no suggestion in this case that Mauney did not act in entire good faith and fairly as to both parties.

■■ We thus have a situation where prior to the fire the insurer requested its agent to cancel its policy and the agent, in lieu of formal notice of cancellation, advised the insured of the situation and obtained his assent to replace the policy to the extent that he could succeed in doing so. He did succeed in obtaining $5,000 of new insurance which the facts show was clearly intended to be in substitution for and not in addition to the authorized amount of $35,000 of insurance. After the fire the actions of the agent were expressly ratified and approved by both parties orally and in writing, and on the basis thereof the assured received payment from the companies, including those who had issued the substituted policies. The insurers, relying on the express statement of the assured that the amount of total insurance did not exceed $35,000, paid the respective amounts due from them without requiring an appraisal of the loss. Here, therefore, we have a case where the actions of the insurance agent, Mauney, were assented to by the insured before the loss and expressly ratified and approved after the loss and acted on by all parties, with full understanding of the facts.

On these undisputed facts the District Judge should have directed a verdict for the defendant. The question of law involved in the case is not whether the policy of the Home Insurance Company was validly cancelled in whole or in part before the fire, in formal accordance with the provisions of the policy and without the insured's consent, but whether the parties by mutual consent agreed that the amount of new insurance should be substituted for an equal amount of the original policy. That

such new agreement may validly be made whether the original policy is surrendered or not is thoroughly well established in the field of fire insurance law. The authorities in support of this proposition are very numerous and we know of none to the contrary. Illustrative cases, involving similar or analogous facts, and announcing the principles of law that govern this case, which required a directed verdict for the defendant, are, White v. Insurance Company (C. C.) 93 F. 161; Id., 103 F. 260 (C. C. A. 1); Finley v. Insurance Co. (C. C.) 193 F. 195; Insurance Co. of North America v. Detroit & Security Trust Co., 51 F. (2d) 155, 158 (C. C. A. 9); Lee v. Insurance Co., 154 N. C. 446, 70 S. E. 819; Belk's Dept. Store v. Insurance Co., 208 N. C. 267, 180 S. E. 63, 67; Eurich v. General Cas. & Surety Co., 152 Md. 209, 136 A. 546; Arnfield v. Guardian Assurance Co., 172 Pa. 605, 34 A. 580; Orkin v. Standard Fire Ins. Co., 99 N. J. Law, 114, 122 A. 823; Seifert v. Northwestern Nat. Ins. Co., 189 Wis. 305, 206 N. W. 832; Pellaggi & Co. v. Orient Ins. Co., 102 Vt. 384, 148 A. 869; Rose Inn v. Nat. Union Fire Ins. Co., 258 N. Y. 51, 179 N. E. 256, 83 A. L. R. 293. See also summaries of the cases in Richards on Insurance (4th Ed.) pp. 451–454; Couch, Cyc. of Ins. Law, Vol. 6, § 1433; Note 83 A. L. R. 298.

 The contention of the appellee is that, as The Home policy was not formally cancelled by five days' written notice in accordance with the provision in the policy, the amount of liability thereon could not be reduced except by written endorsement on the policy. Support for this contention is thought to be found in the following printed conditions of the policy:

"The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss or damage, and any other agreement not inconsistent with or a waiver of any of the conditions or provisions of this policy, may be provided for by rider added hereto.

"No one shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement added hereto, nor shall any such provision or condition be held to be waived unless such waiver shall be in writing added hereto.

"This policy may be cancelled at any time by the Company by giving to the insured a five days' notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."

These policy provisions have no application to the facts of the present case. The first of them is what is known as the provision for "added clauses". It finds its most common application where special "co-insurance" clauses are added to the policy. It is a part of the present well known New York standard form of policy and in part is intended to avoid such changes in the policy contract as would be inconsistent with the requirements of statutory law. It manifestly has no application to the well established doctrine of substitution of policies. Richards on Insurance (4th Ed.) p. 441.

The second of these quoted provisions is the general clause of the policy against parol waivers of "any provision or condition of the policy." The amount of the insurance is not a provision or condition of the policy in the sense here used. The clause is a limitation upon the power of the agents of the Company against its consent to waive or change the written policy conditions by verbal agreement. It has no application to the making of a new agreement between the insured and the insurer whereby the original policy is abandoned in whole or in part and new policies substituted therefor. See Hutchings v. Caledonian Ins. Co. (C. C. A.) 35 F.(2d) 309, 311; Williston on Contracts, Vol. 1, § 591; Vol. 3, § 1828. Moreover, what was done by Mauney as common agent of the insurer and the insured, was expressly ratified by both. Northern Assur. Co. v. Grand View Building Association, 183 U. S. 308, 361, 22 S. Ct. 133, 46 L. Ed. 213.

The third clause is not in point because the appellant here relies on substitution of new policies by mutual agreement and not formal cancellation of its original policy. Sea Ins. Co. v. Johnston, 105 F. 286, 287 (C. C. A. 5); Turner, Dennis & Lowry Lumber Co. v. Insurance Co. (D. C.) 290 F. 541; Dawson v. Insurance Co., 192 N. C. 312, 316, 135 S. E. 34; Eurich v. General Cas. & Surety Co., 152 Md. 209, 136 A. 546; Arnfield v. Guardian Assurance Co., 172 Pa. 605, 34 A. 580.

It is also contended for the appellee that the doctrine of substitution of policies is not available here to the appellant because the substituted policies in this case do not equal in amount the whole of the original policy; or, in other words, it is said that the doctrine of substitution is available only where an original policy is wholly replaced by one or more new policies. No authority is cited in support of this proposition and in principle it is untenable. See May v. Hartford Fire Ins. Co., 297 F. 997, 998 (C. C. A. 2).

Finally it is contended that, while the facts might justify a reduction of the original policy by reformation in accordance with the new agreement of the parties for substitution of the new policies for the old policy in part, yet, as this case is one at law and not in equity, this remedy is not available to the appellant. As to this, it may be said that, while the pleadings and proof in the case would justify the transfer of the suit from law to equity and a decree for the specific performance of the substituted agreement of the parties by the reformation of the original policy [Irons v. Smith, 62 F.(2d) 644 (C. C. A. 4); Great American Ins. Co. v. Johnson (C. C. A.) 25 F.(2d) 847; Id., 27 F.(2d) 71 (C. C. A. 4)], it is quite unnecessary to treat the case in that way as the insured is clearly estopped by its actions from recovering more than $5,000 under the policy sued on. The doctrine of estoppel is one that is available in law as well as in equity both to the insured and to the insurer. It is very frequently applied by the courts in favor of the insured and is equally available, when the facts justify it, to the insurer. Union Mut. L. Insurance Co. v. Wilkinson, 13 Wall. 222, 233, 20 L. Ed. 617; Lee v. Insurance Co., 154 N. C. 446, 70 S. E. 819; 21 C. J. 1118.

The appellant also relies, as another legal bar to the plaintiff's recovery in this suit, on the failure of the insured to file proofs of loss containing the claim now advanced within sixty days after the fire, as required by the policy; but, in view of the conclusions already reached, it is unnecessary to consider this further defense.

It results that the motion duly made by the appellant in the District Court for a directed verdict in its favor should have been granted and the judgment based on a directed verdict in favor of the appellee must be

Reversed.